**In the Interest of Jared Wade TUCKER, a Minor Child.**

No. 06–02–00085–CV.

Court of Appeals of Texas, Texarkana.

Submitted Dec. 12, 2002.

Decided Jan. 10, 2003.

---

Mike Windsor, Loe, Warren, et al., Fort Worth, for appellant.

Deborah J. Race, Ireland, Carroll, Kelley, PC, Jerry Bain, Bain, Files, Jarrett & Bain, Tyler, for appellee.

Melissa A. Charles, Longview, Ad Litem.

Before MORRISS, C.J., ROSS and GRANT,* JJ.

## OPINION

Opinion by Justice ROSS.

In this appeal, Connie Haynes challenges certain provisions in an order of the trial court granting her former husband, Freddy Tucker, the right to establish the primary residence of their child, Jared Wade Tucker, born December 27, 1989.

Freddy and Connie divorced April 24, 1998, and were appointed joint managing conservators of their child, with Connie having primary possession. In April 1999, Connie filed a motion seeking an increase in child support. In May 1999, Freddy filed a general denial to Connie's motion and filed his own counter-petition, seeking the right to establish the primary residence of the child and orders for child support. On August 18, 2000, the parties entered into agreed temporary orders giving Freddy the right to establish the residence of the child and the right to enroll him in school. Also under the agreed temporary orders, Freddy was to be responsible for the child's health insurance premiums and, in lieu of paying monthly child support to Freddy, Connie was to be responsible for all pickup and delivery of the child for periods of visitation. The trial court entered a final order March 22, 2002, denying Connie's motion to modify, ordering primary possession given to Freddy, ordering Connie to pay $500.00 per month in child support, plus $10,000.00 in retroactive child support, and ordering Connie to pay $157.00 per month for health insurance premiums and $5,024.00 in retroactive health insurance premiums.

In this appeal, Connie contends: 1) a trial court cannot order a parent to pay health insurance premiums for a child when the only mention of those premiums was in an attorney's opening statement; 2) a parent who has a child half the time should not be ordered to pay the full guideline amount of child support, absent evidence of the comparative needs, incomes, and expenses of the two parents; and 3) when litigating parents enter into agreed temporary orders regarding the support of their child, the trial court cannot ignore the parties' agreement and order a higher amount of retroactive support. Connie also raises the following additional issues: 1) if Connie prevails in reducing all or part of her retroactive child support and/or health insurance premiums, the award of attorney's fees for trial to Freddy should be reduced accordingly; and 2) in the event Connie prevails on some or all issues on appeal, the award of attorney's fees for appeal should be reduced accordingly.

The parties in this case disagree about the applicable standard of review. Connie sets out in her brief the standards of review for legal and factual sufficiency challenges. Freddy contends the issues raised on appeal attack an award of child support or related attorney's fees and are reviewed for an abuse of discretion.

When we review a trial court's decision regarding child support, we review for an abuse of discretion. *In re Marriage of Hale*, 975 S.W.2d 694, 697 (Tex.App.—Texarkana 1998, no pet.). We again look for an abuse of discretion when we determine whether the trial court erred in ordering retroactive child support. *In re J.G.Z.*, 963 S.W.2d 144, 146 (Tex.App.—Texarkana 1998, no pet.). In conducting an abuse of discretion review in a child

---

* Ben Z. Grant, Justice, Retired, Sitting by Assignment.

support context, we have held that, while factual and legal insufficiency of the evidence are a part of the abuse of discretion review, they are not independent grounds for reversal. *Hale*, 975 S.W.2d at 697. We will reverse only if the court abused its discretion by acting without reference to any guiding rules or principles or by acting arbitrarily or unreasonably. *Id.* We view the evidence in the light most favorable to the trial court's actions and indulge every legal presumption in favor of the judgment. *Id.*

■ As her first point of error, Connie contends the trial court erred when it ordered her to pay health insurance premiums in the amount of $157.00 per month when the only mention of that amount was in Freddy's attorney's opening statement. Connie is correct in her assertion that the only mention of a $157.00 per month health insurance expense was in the following comment during Freddy's attorney's opening statement:

> Judge, I have outlined the written issues for the Court, the amount of child support that's payable. We think we're going to show net resources of Ms. Tucker somewhere in the neighborhood of a $3,000 range. We think her proper child support should be approximately $600 a month. Health insurance premiums paid by Mr. Tucker, $157. We'd like for her to pay that $157 and unreimbursed medical, one-half.

In a suit affecting the parent-child relationship, a court is required, except for good cause shown, to enter an order for the medical support of a child. Tex. Fam. Code Ann. § 154.181 (Vernon 2002). Under Section 154.181(e), a reasonable cost for health insurance is the cost of a health insurance premium that does not exceed ten percent of the responsible parent's net income in a month.

Connie testified she did not have health insurance "right this moment." She further testified her insurance was being reinstated, but she did not know at what time that would happen. The trial court found that Connie's average monthly net resources for the last three years was $3,050.00. The court stated in its findings that it was unable to reconcile the income reported by Connie on her tax returns with her actual spending habits and that she had an undetermined amount of net resources attributable to income from property settlements, recoveries for personal injuries, undetermined sums of money from the sale of assets, and undetermined sums of interest income. The court also found Connie had made significant cash expenditures within two months before trial, including a purchase of a 2002 Lexus automobile and the payment of $150,000.00 for a $297,000.00 new home that is being constructed for her. These findings are supported by the record. Connie's own exhibits showed she was spending $4,000.00 per month, including $300.00 for medical insurance, and anticipated her expenses to go up to $6,000.00 per month. In its findings, the trial court made an "equitable determination that these sums are available or should have been available for payment of child support."

Because $157.00 did not exceed ten percent of Connie's net income per month, and because the trial court was entitled to take into consideration the $300.00 per month Connie was spending on medical insurance for herself, we find the $157.00 per month for health insurance for the child was reasonable as defined by Section 154.181(e). *See* Tex. Fam.Code Ann. § 154.181(e). Therefore, it was not an abuse of discretion for the trial court to order Connie to pay $157.00 per month for the health insurance premiums.

■ Connie next contends the trial court erred in ordering retroactive child support for August 1999 through July 2000, claiming she was in possession of the child for over fifty percent of that time period. However, the parties disagree about the amount of time the child spent with each parent from the time Connie filed suit April 20, 1999, until a temporary order was entered August 18, 2000. Freddy introduced into evidence a calendar from January 1999 to July 2000. Freddy did not testify, and no evidence was given to explain the calendar entries. When asked about her possession of the child, Connie testified that, without a calendar, she did not know the days she had the child. In the briefs before this Court, each party interprets the meaning of Freddy's calendar entries differently. Although she did not explain her methodology, Connie contends the calendar proved she had possession of the child for over fifty percent of the time. Freddy contends the calendar does not make notations of the time the child was in Connie's possession.

For the period 1999 through June 2000, the calendar shows notations of "with Freddy" on 107 days and notations of "Connie had Jared" on two days. There are also notations on the calendar showing when Freddy picked up the child from school and when he took him to school. Although inferences could be drawn about where the child was on the other days of the calendar, no clear notations are made. The days in June and July 2000 are marked either with the name "Connie" or "Freddy," with "Connie" written on twenty-three of the marked days and "Freddy" written on fifteen days. Therefore, if we look at the notations on the calendar and make no presumptions about where the child was otherwise, the calendar shows Freddy with possession of the child for 122 days and Connie with possession twenty-five days. Viewing the calendar in the light most favorable to the trial court's actions, the calendar evidenced Freddy had possession of the child significantly more than Connie. This supports the trial court's finding that Connie relinquished actual possession of the child to Freddy in the summer of 1999.

As stated earlier, Freddy did not testify or explain the calendar notations. And, although Connie testified, she said throughout the record she did not know the days she had possession of the child. The contentions of error in Connie's brief are based on her having possession of the child for a significant amount of time. However, no evidence in the record, including the calendar notations introduced by Freddy, supports her claims of possession for such a length of time. When reviewing for an abuse of discretion, we view the evidence in a light most favorable to the trial court's decision. *Hale*, 975 S.W.2d at 697. We cannot say it was an abuse of discretion for the trial court to order retroactive child support to be paid by Connie.

■ As her third point of error, Connie contends retroactive support orders cannot be ordered by the trial court when such an order goes against the agreed temporary orders of the parties. Connie filed a motion to modify child support April 20, 1999. On May 19, 1999, Freddy filed a counter-petition to modify, seeking a change in custody and an order for child support. In his amended counter-petition, filed July 24, 2000, Freddy alleged that the living environment with Connie may endanger the child's physical health or significantly impair the child's emotional development and that Connie had essentially voluntarily relinquished the actual care, control, and possession of the child for not less than six months. He also alleged the child was ten

years of age or older and had filed with the trial court the name of the person who was the child's choice for managing conservator. On August 18, 2000, the parties entered into an agreed temporary order, to be in force until further order of the court. Under that order, Freddy was given possession of the child and was ordered to continue to pay the health insurance for the child. In lieu of paying monthly child support to Freddy, Connie agreed to be responsible for all pickup and delivery of the child for all periods of possession outlined in the order.

On March 22, 2002, the trial court entered its final order. As a part of that order, Connie was ordered to pay health insurance premiums and child support, retroactive to August 1, 1999. Connie contends it was error for the trial court to enter retroactive payments of health insurance and child support because such order goes against the terms set out in the agreed temporary orders. Freddy contends TEX. FAM.CODE ANN. § 156.401(b) (Vernon 2002) authorizes the retroactive support that was given in this case.

■ Texas courts, including this Court, have held retroactive support under Section 156.401(b) may be retroactive to the filing of the motion to modify. *J.G.Z.*, 963 S.W.2d at 146; *Holley v. Holley*, 864 S.W.2d 703, 707 (Tex.App.—Houston [1st Dist.] 1993, writ denied); *Willis v. Willis*, 826 S.W.2d 700, 702 (Tex.App.—Houston [14th Dist.] 1992, no writ); *Rocha v. Villarreal*, 766 S.W.2d 895, 898 (Tex.App.—San Antonio 1989, no writ). Specific notice is required when retroactive child support is being sought. *J.G.Z.*, 963 S.W.2d at 148. In *J.G.Z.*, we found it was an abuse of discretion to extend retroactive support beyond the date of the motion to modify. *Id.* at 150. In this case, Freddy's motion to modify was filed May 19, 1999. Connie was ordered to pay retroactive child support back to August 1, 1999. When Freddy filed his motion to modify May 19, 1999, Connie had notice that child support was at issue. The trial court has the power to order retroactive support back to the original motion to modify so long as it puts the other party on notice that child support is at issue. *See Holley*, 864 S.W.2d at 707. It was not an abuse of discretion by the trial court to order payments retroactive to August 1, 1999, because that date was after Freddy's counter-petition to modify had given Connie notice that child support was at issue. Nonetheless, Connie contends the trial court cannot order retroactive child support when it goes against the agreed temporary order entered into by the parties.

This appears to be the first time this issue has been addressed by the appellate courts in Texas. However, the appellate courts have addressed the effect of temporary orders in other circumstances. In a divorce case, the Dallas Court of Appeals found a provision in an agreed temporary order that indicated the debts for which a spouse would be responsible during the pendency of the case did not bind the trial court in its division of property and debts after a trial on the merits. *Marshall v. Marshall*, 735 S.W.2d 587, 597 (Tex.App.—Dallas 1987, writ ref'd n.r.e.). In *Ex parte Shaver*, the Dallas Court of Appeals held a divorce decree supersedes a temporary order with respect to future support, but the obligation for past support, as fixed by the temporary order, continues *unless* modified by the provisions of the divorce decree. *Ex parte Shaver*, 597 S.W.2d 498, 500 (Tex.Civ.App.—Dallas 1980, orig. proceeding). In *Morris v. Morris*, the Tyler Court of Appeals held a temporary order became "functus officio" when the divorce decree was signed by the trial court. *Morris v. Morris*, 654 S.W.2d 789, 791 (Tex.App.—Tyler 1983, no writ).

As stated, we review an award of retroactive child support for an abuse of discretion. *J.G.Z.*, 963 S.W.2d at 146. In *J.G.Z.*, we recognized "it is imperative that the trial judge have broad discretion to decide whether all of the facts and circumstances necessitate and justify a retroactive award of support." *Id.* at 146–47 (quoting *Rocha*, 766 S.W.2d at 899). The Houston Court of Appeals has held an agreement incident to divorce does not prohibit a modification of support payments and a trial court can "modify the court-ordered support payments, notwithstanding any agreement of the parties, if it was in the child's best interest." *McGuire v. McGuire*, 4 S.W.3d 382, 385 (Tex.App.—Houston [1st Dist.] 1999, no pet.). Considering all of the above, we hold it was not an abuse of discretion for the trial court to order retroactive child support for the time period in issue, irrespective of the temporary orders.

Because we overruled all of Connie's points of error discussed above, it is unnecessary to address her contentions regarding attorney's fees.

We affirm the judgment.