**Affirm and Opinion Filed June 19, 2013**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-12-00460-CV

## IN THE INTEREST OF T.G., A CHILD

On Appeal from the 254th Judicial District Court
Dallas County, Texas
Trial Court Cause No. DF-10-09560

## MEMORANDUM OPINION

Before Justices O'Neill, Francis and Fillmore
Opinion by Justice Francis

Jerimi Gonzales (Father) appeals the trial court's order in this suit affecting the parent-child relationship. In two issues, he contends the trial court abused its discretion by ordering him to pay retroactive child support for his son, T.G., and by naming the child's mother, Shechinah Gardner, joint managing conservator with the exclusive right to determine the child's residence. We affirm.

Mother filed this suit in May 2010 and alleged Gonzales was the father of her child. Among other things, she asked the trial court to appoint the two of them as joint managing conservators, to designate her as the conservator with the exclusive right to determine the child's primary residence, and to order Father to pay child support. Father filed a counter-petition acknowledging he is the father of the child and alleging Mother has a history or pattern of committing family violence during the two years preceding the filing of the suit. Among other

things, he asked the trial court to appoint him as sole managing conservator, to deny Mother access to the child or allow only supervised visitation, and to order Mother to pay child support.

During the pendency of the case, the parties agreed to temporary orders that provided for "50/50 possession" of the child and no child support to be paid by either party. Questions regarding conservatorship and whether either party had a history of family violence were reserved until the final hearing.

At the bench trial, Mother testified T.G. was born March 4, 2008. Except for a six- or seven-month period in 2009 when the three of them lived together, Mother provided the primary care for T.G. up until the time of the filing of this suit, and Father, who was away at college, saw T.G. about once a month. Since the suit was filed, she said she and Father had operated on a week-on, week-off schedule.

Mother testified she earned $8.80 an hour as a medication aide and residential trainer at MHMR of Tarrant County. She worked Monday through Friday, 6 a.m. to 10 a.m., and netted about $300 every two weeks. After work, she took classes at Tarrant County Community College. She said she took T.G. to her mother's house each morning, and her mother would then take T.G. to a day care facility. Mother picked up T.G. at about 3:30 or 4 p.m. She said because of her schedule, she can take care of T.G. She and T.G. live in a two-bedroom duplex with a backyard. T.G. has his own room. Her parents help her with expenses while she is in school.

Mother also testified about an incident that occurred in May 2010, two weeks before she filed this suit. Father had returned from college and was at Mother's apartment. Mother learned that Father had cheated on her and asked him to leave. Father refused and would not allow her to leave. Mother said she "finally got away" and ran across the hall to call the police from her neighbor's cell phone. She said Father came out of the apartment, snatched the phone from her

hand, and threw it against the wall, breaking it. She said Father then pulled her back into her apartment, and she grabbed a knife to defend herself. Mother denied striking him with the knife and said she was "not aware" of any injuries he sustained. However, she said she had bruises on her face and arms and scratches on her arms as a result of Father restraining her and taking the knife away. When the police arrived, she was arrested and charged with assault. She later agreed to a protective order but was not represented by counsel at the time. (A copy of the protective order was attached to Father's counter-petition but is unreadable.) Mother testified the assault case was "in the process of being dismissed" and characterized it as an "an isolated incident."[1] She said she had never been arrested prior to or since the incident nor had there been any violence between her and Father before or after the incident. She did, however, describe an incident in which she said Father "confronted" her boyfriend. Mother was returning T.G. after a baseball game. Mother's boyfriend, Justin Fisher, got out of the car to hug T.G., and Father ran out of the house, "got in [Fisher's] face, pointed his finger," and warned him not to come around T.G. or to touch him. Mother said Father cursed Fisher and was "very aggressive." Fisher, a federal air marshal, tried to reason with Father. The incident occurred in front of T.G.

Mother acknowledged she agreed to temporary orders, proposed by Father, that the two share T.G. 50/50 during the pendency of the case. At trial, she said she wanted T.G. to live with her and for Father to be allowed standard visitation. She said she did not "have to have child support." She also said she took co-parenting classes recommended by a court-ordered social study as well as a Kids First class. She also completed the Batterer's Intervention Prevention

---

[1] Mother has filed a motion asking this Court to take judicial notice that the assault charge has been dismissed. Attached to the motion is a copy of the order dismissing the case. Because this was not evidence before the trial court, we will not consider it in our review and a separate order denying the motion has issued on this date.

Program (BIPP) and, at the suggestion of the social study, is attempting to obtain counseling for T.G.

Father testified he worked thirty hours a week at the Boys and Girls Club of Greater Dallas, earning $15 an hour. He also is taking online classes at El Centro College to complete his degree. Father agreed that T.G. did not live with him during the years he attended colleges in San Angelo and Lubbock, but said he came home "at least three times a month." He testified his mother was T.G.'s primary caregiver during that time, not Mother. Father lived with his mother in a two-bedroom apartment in which he and T.G. shared one of the bedrooms. He said his mother picked up T.G. from day care at about 3 p.m., and sometimes brought him to Father's work. Father got home each day at about 6:15 p.m., and T.G. was in bed no later than 9 p.m.

As for the May 2010 incident, he testified Mother found out he cheated on her and was upset. When he tried to explain, she hit him with his laptop and punched and scratched him. Father said he told Mother to leave him alone, and she went out into the hallway to call 911 from the neighbor's apartment and was screaming. He opened the door and told her to "get inside" because she was "causing a scene and disrupting the neighbors." Father admitted he "snatched" the phone from Mother's hand and threw it on the ground, but he denied breaking it. He said Mother then went back into her apartment, "punching, hitting, kicking, scratching."

Once inside, Father said he was lying on his stomach on the couch when Mother grabbed a knife and started "forcing" it in his back. He said it "only caused minor flesh wounds," but the police "knew something happened" because there was blood on the back of his shirt. Father said that while she was being arrested, Mother was screaming that she should have killed him. As for evidence he threatened Mother's boyfriend, he denied trying to start a fight and said he did not touch him. He agreed there was "an incident," saying "I told him don't touch my son or else - -

no or else. I just told him that's disrespectful to me as a man and a father and in front of my . . . aunt and uncle." Finally, although the court-ordered social study suggested both he and Mother take parenting classes, Father said he did not take them because he had not been ordered to and the study only said he "should" take the classes.

In addition to the parents' testimony, Mother's mother, father, and stepmother all testified they had seen T.G. and Mother interact on a regular basis and said they have a "very loving and nurturing" relationship. They also said Mother was T.G.'s primary caregiver up until the time of the temporary orders and, during the times Father was in school, he would visit once a month or during school breaks. Additionally, Fisher's mother testified she witnessed the incident between Father and her son, and she corroborated Mother's version of what happened.

After hearing the evidence, the trial court issued a written decision notifying the parties of its ruling. In its decision, the trial court stated that it was "not convinced that either party was being entirely truthful in their testimony before the Court" and further found that "testimony regarding who lived where and with whom and for what period was significantly convoluted and remarkably unclear . . .." Further, the trial court stated that "[w]hile there appears to have been some altercations or confrontations that should be characterized as family violence[,] it is unclear who was the instigator of the disturbance/s." The court specifically mentioned the disturbance where "father confronted the mother's boyfriend" and found it "highly out of place and seriously troubling to the Court." The trial court also found Father's "somewhat cavalier attitude" about the parenting and co-parenting classes "concerning" but was "encouraged" by Mother's decision to attend those classes as well as the BIPP course. Based on those "observations and the testimony and evidence," he made rulings that were ultimately incorporated into the final judgment.

In the judgment, the trial court appointed Mother and Father as joint managing conservators of T.G. with Mother having the right to designate the child's primary residence. The trial court determined the parties could exercise alternating weeks of possession and ordered Father to pay child support of $228 per month, beginning November 1, 2011. The trial court also confirmed Father's child support payments were in arrears in the amount of $3,876 as of October 27, 2011 and ordered him to pay $150 each month, beginning December 1, 2011, until paid. Father filed a motion for new trial and requested findings of fact and conclusions of law under Texas Rule of Civil Procedure 296. The trial court denied the motion for new trial and made findings that, among other things, (1) Father is the biological father of the child, (2) it is in the child's best interest for Father and Mother to be appointed joint managing conservators with Mother having the right to designate the child's primary residence, and (3) Father owes retroactive child support in the amount of $3,876. Father then requested additional or amended findings of fact under rule 298 on a variety of issues, including findings and conclusions required by section 154.130 of the family code. The trial court did not make further findings. This appeal ensued.

A trial court's order regarding retroactive child support and conservatorship is subject to review for abuse of discretion. *In re Guthrie*, 45 S.W.3d 719, 727 (Tex. App.—Dallas 2001, pet. denied) (retroactive child support); *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007) (conservatorship). The test for abuse of discretion is whether the trial court acted in an arbitrary and unreasonable manner or whether it acted without reference to any guiding principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985). In family law cases, the abuse of discretion standard overlaps with the traditional sufficiency standards of review; as a result, legal and factual sufficiency are not independent grounds of error but are relevant factors

in our assessment of whether the trial court abused its discretion. *In re A.B.P.*, 291 S.W.3d 91, 95 (Tex. App.—Dallas 2009, no pet.); *In re S.M.V.*, 287 S.W.3d 435, 446 (Tex. App.—Dallas 2009, no pet.). To determine whether the trial court abused its discretion because the evidence is insufficient to support its decision, we consider whether the trial court (1) had sufficient evidence upon which to exercise its discretion and (2) erred in its exercise of that discretion. *In re A.B.P.*, 291 S.W.3d at 95; *In re S.M.V.*, 287 S.W.3d at 446. We conduct the applicable sufficiency review with regard to the first question. *A.B.P.*, 291 S.W.3d at 95; *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied). We then proceed to determine whether, based on the elicited evidence, the trial court made a reasonable decision. *Moroch*, 174 S.W.3d at 857. Stated inversely, we must conclude the trial court decision was neither arbitrary nor unreasonable. *Id*.

In a legal sufficiency review, we consider the evidence in the light most favorable to the trial court's order and indulge every reasonable inference that supports it. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005); *In re S.E.K.*, 294 S.W.3d 926, 930 (Tex. App.—Dallas 2009, pet. denied). When considering a challenge to the factual sufficiency of the evidence, we consider all evidence and determine whether the evidence supporting the order is so weak or so against the overwhelming weight of the evidence that the order is clearly wrong and manifestly unjust. *See City of Keller*, 168 S.W.3d at 822. When the evidence is conflicting, we must presume the factfinder resolved the inconsistency in favor of the order if a reasonable person could do so. *See id*. at 821. The trial court does not abuse its discretion if some evidence of a substantial and probative character exists to support the trial court's decision. *S.E.K.*, 294 S.W.3d at 930. The trial court is in the best position to observe the witnesses and their demeanor, and we give the court great latitude when determining the best interest of a child. *Id*.

In his first issue, Father contends the trial court abused its discretion in ordering him to pay retroactive child support because (1) there were no specific pleadings requesting that relief; (2) the parties agreed no child support was to be ordered while the case was pending; (3) both parents split possession of the child during the pendency of the case; (4) the trial court failed to enter specific findings of fact and conclusions of law as required by section 154.131 of the Texas Family Code; and (5) the evidence was not legally and factually sufficient to support a judgment for retroactive child support.

We begin with Father's complaint regarding the lack of pleadings. Courts have required an award of retroactive child support to be supported by pleadings that seek affirmative relief. *In re R.G.G.*, 2005 WL 723664, at *2. A request for retroactive child support is a claim for affirmative relief. *Id.* In her original petition, Mother alleged Gonzales was the father and was "obligated to support the child and should be ordered by the Court to make payments for the support of the child." Further, in her petition, she sought temporary orders for child support. Thus, we conclude the pleadings affirmatively sought child support from the initial filing of the petition. The record shows the trial court confirmed an arrearage in the amount of $3,876, which equaled the time period from the date Mother's petition was filed in May 2010 until judgment was pronounced in October 2011 (seventeen months) times the amount of monthly child support ordered ($228). We conclude this issue is without merit.

Next, Father argues the trial court abused its discretion in awarding retroactive child support in light of the parties' agreement in the temporary orders that no child support would be ordered and in light of the fact the parties agreed to split possession of the child during the pendency of the case.

Retroactive child support is available in two circumstances: (1) when child support has not been previously ordered and (2) to retroactively modify a child support obligation. TEX. FAM. CODE ANN. §§ 154.009, 156.401 (West 2008 & Supp. 2012); *In re R.G.G.*, No. 03-04-00445-CV, 2005 WL 723664, at *2 (Tex. App.—Austin 2005 Mar. 31, 2005, no pet.) (mem. op.). The first circumstance applies here.

In his brief, Father acknowledges *In re Tucker*, 96 S.W.3d 662, 668 (Tex. App.—Texarkana 2003, no pet.). In *Tucker*, the mother filed a motion to increase child support, and the father filed a competing motion to establish the primary residence of the child and for child support. During the pendency of the case, the parties agreed to temporary orders giving the father the right to establish the child's residence and enroll him in school. In addition, the father was responsible for the child's health insurance premiums and the mother, in lieu of paying monthly child support, was to be responsible for all pickup and delivery of the child during visitation. When the trial court rendered a final order, however, it ordered the mother to pay $500 monthly in child support, $10,000 in retroactive child support, $157 monthly for the child's health insurance premiums, and $5,024 in retroactive health insurance premiums. *Id*. at 664.

On appeal, the mother argued that when litigating parents enter into agreed temporary orders regarding the support of their child, the trial court cannot ignore the parties' agreement and order a higher amount of retroactive support. The Texarkana court, however, disagreed, and began by considering this Court's analysis of the effect of temporary orders in other circumstances. *See Marshall v. Marshall*, 735 S.W.2d 587, 597 (Tex. App.—Dallas 1987, writ ref'd n.r.e.) (concluding provision in agreed temporary order that indicated debts for which spouse would be responsible during pendency of case did not bind trial court in division of property and debts after trial on merits in divorce case); *Ex parte Shaver*, 597 S.W.2d 498, 500

(Tex. Civ. App.—Dallas 1980, orig. proceeding) (holding divorce decree supersedes temporary order with respect to future support, but obligation for past support, as fixed by temporary order, continues *unless* modified by provisions of divorce decree). The court then concluded that, given the broad discretion allowed to trial courts to consider the facts and circumstances in these matters, the trial court did not abuse its discretion by ordering retroactive child support, despite the agreed temporary orders. *In re Tucker*, 96 S.W.3d at 668.

We agree with the reasoning of *Tucker* and likewise conclude the trial court did not abuse its discretion. That the parties reached an agreement as to child support and possession during the pendency of the suit did not preclude the trial court from ordering retroactive child support here. We conclude this issue is without merit.

Father next argues the trial court abused its discretion by failing to enter specific findings of fact and conclusions of law on each element of the retroactive child support issue as required by section 154.131 of the family code. He argues he needs additional findings on (1) net resources during the relevant time period, (2) whether Father provided actual support or other necessaries before the filing of this suit, and (3) the time period used by the trial court to calculate the amount of retroactive support. Without these findings, he contends he cannot adequately present his complaint. We disagree.

Initially, we note that in his request for amended findings and conclusions, Father sought additional findings of fact and conclusions of law under section 154.130 of the family code. Section 154.130 governs findings in a child support order, without regard to Texas Rules of Civil Procedure 296 through 299, and requires a trial court to make findings if a party files a written request with the court not later than 10 days after the date of the hearing or makes an oral request during the hearing or the amount of child support ordered by the court varies from the amount

computed by applying the percentage guidelines. TEX. FAM. CODE ANN. § 154.130 (West Supp. 2012).

Here, Father does not argue the amount of child support varied from the guidelines, and the record shows he did not make a timely written or oral request under section 154.130; thus, he has waived any findings under section 154.130. Further, if the refusal to file additional findings does not prevent a party from adequately presenting an argument on appeal, there is no reversible error. *Flanary v. Mills*, 150 S.W.3d 785, 792 (Tex. App.—Austin 2004, pet. denied). The issue of retroactive child support was not complicated nor was the evidence, and appellant was not prevented from making his appeal by the lack of any particular findings.

Finally, Father contends the evidence is legally and factually insufficient to support a judgment for retroactive child support because there was no finding and no evidence concerning his net resources during the relevant time period. He acknowledges net resources may be calculated on "imprecise information," but asserts there was a "near-total absence of relevant evidence of [his] income for a 17-month period."

In making an award for retroactive child support, the trial court "shall apply the child support guidelines provided by this chapter" and "consider the net resources of the obligor during the relevant time period." TEX. FAM. CODE ANN. §§ 154.009(b), 154.131(b). Moreover, the trial court is required to consider whether (1) the mother had made previous attempts to notify the father of his paternity, (2) the father had knowledge of probable paternity, (3) the order will impose an undue hardship on the father or his family, and (4) the father provided actual support prior to the filing of the action. *Id*. at § 154.131(b)(1)-(4). Section 154.131 does not bind the trial court to the listed factors but merely guides the trial court in determining the amount of retroactive child support. *Garza v. Blanton*, 55 S.W.3d 708, 710 (Tex. App.—Corpus

Christi 2001, no pet.). Finally, the family code presumes "that a court order limiting the amount of retroactive child support to an amount that does not exceed the total amount of support that would have been due for the four years preceding the date the petition seeking support was filed is reasonable and in the best interest of the child." TEX. FAM. CODE ANN. § 154.131(c).

Having reviewed the record, we conclude there was sufficient evidence upon which the trial court could determine Father's net resources during the relevant period. The evidence in this case showed that Father had been working as program coordinator at the Boys Club since May 2010, the month this suit was filed. He testified he worked thirty hours a week, and other evidence showed his hourly wage increased from $11 to $15 in December 2010. In the court-ordered social study, he represented he earned between $1,800 and $2,100 monthly. In addition, the record contains pay stubs from his work for pay periods in July and August 2011; a 2010 W-2 form showing wages of $12,116.48; and a 2010 tax return that, in addition to his wages, showed he took an earned income credit and additional child tax credit and claimed a refund of $5,490. Thus, contrary to Father's contention, there was sufficient evidence of his income for the seventeen-month period between the filing of the suit and judgment for the trial court to determine Father's net resources and to calculate an amount of retroactive child support. We overrule the first issue.

In his second issue, Father contends the trial court abused its discretion in naming Mother joint managing conservator with the exclusive right to establish the residence of the child. Within this issue, he complains the ruling was error when (1) there was an agreed protective order in effect against Mother in favor of Father; (2) he presented credible evidence of a history or pattern of physical abuse by Mother against him; (3) the trial court failed to make specific findings of fact to show how it considered the protective order and to identify evidence it found

credible regarding any history or pattern of physical abuse by one parent against the other; (4) the trial court failed to make more specific findings on the issues of conservatorship and possession; and (5) the evidence was not legally and factually sufficient to support the ruling.

In determining conservatorship, the best interest of the child shall be the primary consideration. TEX. FAM. CODE ANN. § 153.002. The trial court has wide latitude in determining the best interest of the child, and the decision of the trial court will be reversed only when it appears from the record as a whole that the court has abused its discretion. *In re Marriage of Stein*, 153 S.W.3d 485, 488 (Tex. App.—Amarillo 2004, no pet.). It is a rebuttable presumption that the appointment of the parents of a child as joint managing conservators is in the best interest of the child. TEX. FAM. CODE ANN. § 153.131(b). A finding of a history of family violence involving the parents of the child removes the presumption, however. *Id.*

Section 153.004 of the family code applies to a conservatorship decision when there is a history of physical abuse within the family. *See* TEX. FAM. CODE ANN. § 153.004 (West 2008); *Alexander v. Rogers*, 247 S.W.3d 757, 761 (Tex. App.—Dallas 2008, no pet.). As applicable here, when making its decision about the conservatorship of the child, the trial court was required to consider credible evidence of the intentional use of abusive physical force by one parent against the other parent, committed within a two-year period preceding the filing of the suit or during the pendency of the suit. *See* TEX. FAM. CODE ANN. § 153.004(a); *Alexander*, 247 S.W.3d at 761. If credible evidence of a history or pattern of family violence is presented, the trial court may not appoint joint managing conservators. *Id.* at § 153.004(b). In determining whether there is credible evidence, the trial court shall consider whether a protective order was entered against the parent during the same time frame. *See* TEX. FAM. CODE ANN. § 153.004(f); *Stucki v. Stucki*, 222 S.W.3d 116, 122 (Tex. App.—Tyler 2006, no pet.). Entry of a protective

order is not dispositive on the issue of conservatorship, however. *Alexander*, 247 S.W.3d at 764. If there is credible evidence of a history or pattern of past or present physical abuse by one parent against the other parent, the family code establishes a rebuttable presumption that the appointment of the abusive parent as the conservator with exclusive right to determine the child's primary residence is not in the best interest of the child. TEX. FAM. CODE ANN. § 153.004(b).

In his brief, Father's complaints regarding the trial court's decision on conservatorship and possession are premised on the notion that his version of the May 2010 incident is somehow controlling and established a history of violence by Mother against him. But, in its written decision, the trial court stated the following: "While there appears to have been some altercations and confrontations that should be characterized as family violence it is unclear who was the instigator of the disturbance/s." The trial court's statement, combined with the statute's prohibition against appointing joint managing conservators if credible evidence of a history or pattern of family violence is presented, leads us to the conclusion that, while the trial court perhaps believed an incident occurred, it did not find credible evidence of a "history" of family violence. Evidence at the hearing was conflicting with each parent blaming the other for what transpired. The trial court certainly did not have to believe Father's version, even in light of the fact that Mother was the person arrested. Mother's family testified she was not prone to violence and described her as a "sweet spirit" who did not have a "bad temper." Father acknowledged he did not fear for his child's safety in Mother's presence and, in fact, the two parties had been jointly parenting the child during the pendency of the case. Although Father relies heavily on the fact that a protective order was entered, the record shows there was no trial on the issue because Mother agreed to it without the benefit of counsel; consequently, the family court was the first court to consider both parties' accounts.

We acknowledge this Court and other courts of appeals have stated that one incident can constitute a "history of physical abuse." *See Alexander*, 247 S.W.3d at 762; *In re R.T.H.*, 175 S.W.3d 519, 521 (Tex. App.—Fort Worth 2005, no pet.); *In re Marriage of Stein*, 153 S.W.3d at 489. But, we have never concluded one incident must always constitute a "history of physical abuse" and to the extent any other court suggests that it must, we disagree. Had the Legislature intended that one act would forever bar two parents from jointly managing their child, it could have said so. As for the trial court's determination to allow Mother to determine the child's primary residence, there was considerable evidence that for the majority of T.G.'s life, Mother had been his primary caregiver and, according to those who have seen her parent, she has been a good and loving mother.

In short, the trial court was not convinced either party was entirely truthful in his or her testimony and was not certain which was the instigating party. But, the trial court was convinced that even in spite of the "altercations and confrontations," Mother and Father should be appointed joint managing conservators with Mother given the right to designate the primary residence. Given the record before us, we cannot conclude the trial court's determination was an abuse of discretion.

As for Father's argument that we should reverse because of the trial court's failure to make additional findings, we disagree. If the refusal to file additional findings does not prevent a party from adequately presenting an argument on appeal, there is no reversible error. *Flanary*, 150 S.W.3d at 792. Although he argues he has been left to "speculate" as to why the trial court failed to name him managing conservator in light of the evidence presented, the evidence presented was not complicated and Father has thoroughly briefed his arguments. Even if Father

were entitled to more detailed findings, the record reveals the court's failure to provide them has

not impaired his ability to appeal.  We overrule the second issue.

We affirm the trial court's order in suit affecting the parent-child relationship.


/Molly Francis/
120460F.P05            MOLLY FRANCIS
                       JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF T.G., A CHILD

No. 05-12-00460-CV

On Appeal from the 254th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DF-10-09560.
Opinion delivered by Justice Francis;
Justices O'Neill and Fillmore participating.

In accordance with this Court's opinion of this date, the trial court's order in suit affecting parent-child relationship is **AFFIRMED**.

It is **ORDERED** that appellee Shechinah Gardner recover her costs of this appeal from appellant Jerimi Gonzales.

Judgment entered June 19, 2013

/Molly Francis/
MOLLY FRANCIS
JUSTICE