Opinion issued February 27, 2024



In The

# Court of Appeals

For The

# First District of Texas

———————————————

## NO. 01-22-00605-CV

———————————————

## IN THE INTEREST OF D.L.C., A CHILD

———————————————

**On Appeal from the 309th District Court**
**Harris County, Texas**
**Trial Court Case No. 2020-38549**

———————————————

## MEMORANDUM OPINION

Appellant, N.M. (Father),[1] appeals from the trial court's final order in this suit affecting the parent–child relationship. Father argues the trial court erred in determining the home state of his daughter D.L.C. and in ordering him to pay

---

[1] To protect the identity of the child, we use initials to refer to the child and refer to her parents as "Mother" and "Father." *See* TEX. FAM. CODE § 109.002(d).

monthly child support and retroactive child support. We modify the trial court's order in part, and reverse and remand in part. We affirm the remainder of the order as modified.

## BACKGROUND

D.L.C. was born in August 2019. At the time, her mother and father were not married to each other, but both lived in Houston. When D.L.C. was about five months old, in January 2020, she and V.C.F. (Mother) moved to be closer to Mother's family in Indiana. They have lived in Indiana ever since. About five months after D.L.C. and Mother moved, Father filed a petition to adjudicate parentage in a district court in Harris County, asking the trial court to declare him D.L.C.'s father. Father continues to live in Houston.

While the suit was pending, Mother and Father entered into a mediated settlement agreement providing neither party would pay child support at that time, among other things. The trial court entered a temporary order with the same terms.

Following a bench trial, the trial court entered a final order adjudicating Father to be D.L.C.'s father and appointing Father and Mother as D.L.C.'s joint managing conservators. The order stated the trial court's finding that Indiana is D.L.C.'s current home state, but Texas was her home state in the six months preceding suit. The order also required Father to pay $590.87 each month in child support, based on

a finding that his monthly net resources were $2,954.33. The order required Father to pay $15,644.00 in retroactive child support. Father has appealed.

## DISCUSSION

Father raises three issues on appeal. First, he argues the trial court erred in ordering him to pay retroactive child support in spite of the parties' mediated settlement agreement not to pay child support while the suit was pending. Second, he argues the trial court erred in naming both Texas and Indiana as D.L.C.'s home state. Third, he argues there was no evidence to support the trial court's finding that his monthly net resources were $2,954.33, and the trial court erred in basing his monthly child-support obligations on this amount.

### A. Home State

### *Applicable Law*

In child-custody cases involving multiple states, the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) determines whether a court of a particular state has jurisdiction to make an initial child-custody determination. *See Powell v. Stover*, 165 S.W.3d 322, 325 (Tex. 2005) (orig. proceeding); *see also* TEX. FAM. CODE §§ 152.001–.317 (codifying UCCJEA in Texas).[2] A Texas court has

---

[2]     Whether the word "jurisdiction" in the UCCJEA refers to subject-matter jurisdiction is unclear. The Texas Supreme Court has observed that among courts in other states that have considered the jurisdictional issue, "some refer to the UCCJEA as a subject-matter-jurisdiction statute, while others do not. The issue is not settled." *In re D.S.*, 602 S.W.3d 504, 517–18 (Tex. 2020) (footnotes omitted).

3

jurisdiction to make an initial child-custody determination if Texas:

> is the home state of the child on the date of the commencement of the proceeding, *or was the home state of the child within six months before the commencement of the proceeding* and the child is absent from this state but a parent or person acting as a parent continues to live in this state[.]

TEX. FAM. CODE § 152.201(a)(1) (emphasis added).

Chapter 152 of the Texas Family Code, this state's enactment of the UCCJEA, defines "home state" as "the state in which a child lived with a parent" for "at least six consecutive months immediately before the commencement of a child custody proceeding," or, for a child younger than six months, "the state in which the child lived from birth with a parent." TEX. FAM. CODE § 152.102(7).

With some exceptions, the court in the child's home state that made the initial child-custody determination "has exclusive continuing jurisdiction over the determination." *Id.* § 152.202(a).

To remedy the problem of courts in different states issuing conflicting child-custody orders, the UCCJEA prioritizes home-state jurisdiction. *Powell*, 165 S.W.3d at 325. Thus, if any state is determined to be the child's home state, generally no other state may exercise jurisdiction to make an initial child-custody determination. *See id.* By giving prominence to objective factors, like the child's physical location, the UCCJEA "helps to avoid the jurisdictional competition and conflict that result

4

when courts in different states determine jurisdiction based on subjective factors."

*Id.* at 326.

Construction of the Family Code's home-state provision is a question of law we review de novo. *Id.* at 324.

*Analysis*

The trial court's final order stated:

> [T]he child currently lives in Indiana[,] and the home state of the child is Indiana; however, the Court finds that it has jurisdiction of this case and of all the parties because . . . Texas was the home state of [t]he child during the last six months prior to the filing of this suit and that no other court has continuing, exclusive jurisdiction of this case.

Father contends the trial court erred by finding Indiana was D.L.C.'s home state in addition to Texas. Given the UCCJEA's purpose to avoid conflicting court orders in multiple states and priority for home-state jurisdiction, *see id.* at 325, we agree that after the trial court found Texas was D.L.C.'s home state, the trial court should not have determined an additional home state.

We conclude that Texas, and only Texas, was D.L.C.'s home state when Father filed suit. The parties agree that D.L.C. was born on August 22, 2019, and that on or about January 20, 2020, when she was about five months old, she and her mother moved to Indiana. Father filed suit about five months after that, on June 29, 2020. Thus, the relevant date for determining D.L.C.'s home state is June 29, 2020.

*See* TEX. FAM. CODE § 152.201(a)(1) (home state determined on date of commencement of child-custody proceeding).

On that date, D.L.C. had not lived in Indiana for at least six consecutive months, so Indiana was not her home state. *See id.* § 152.102(7) (defining "home state" generally as "the state in which a child lived with a parent" for "at least six consecutive months immediately before the commencement of a child custody proceeding").

The six-month period before Father filed suit spanned from December 29, 2019, to June 29, 2020—the date on which Father filed suit. *See id.* § 152.201(a)(1) (jurisdictional inquiry includes whether Texas was child's home state "within six months before the commencement of the [child-custody] proceeding"). Within that six-month period, from December 29, 2019, until she moved to Indiana on January 20, 2020, D.L.C. was younger than six months and lived in Texas with her parent. Thus, Texas was her home state from her birth until she moved on January 20. *See id.* § 152.102(7) (defining "home state" for child younger than six months as "the state in which the child lived from birth with a parent"); *see also Waltenburg v. Waltenburg*, 270 S.W.3d 308, 318 (Tex. App.—Dallas 2008, no pet.) (noting that "immediately upon" child's birth in Texas, Texas became child's home state).

Thus, in the six months before Father filed suit, Texas was D.L.C.'s home state, and Indiana was not yet D.L.C.'s home state, so Texas courts had jurisdiction of the initial child-custody determination. *See* TEX. FAM. CODE § 152.201(a)(1).

Therefore, Texas, and not Indiana, was D.L.C.'s home state when Father filed suit, and the trial court erred in concluding otherwise. We therefore sustain Father's second issue and modify the trial court's order to delete the finding that Indiana is D.L.C.'s home state. *See* TEX. R. APP. P. 43.2(b) (court of appeals may modify trial court's judgment and affirm as modified).

## B.     Net Resources and Monthly Child-Support Obligations

### *Applicable Law*

The Family Code's child-support guidelines "are intended to guide the court in determining an equitable amount of child support." TEX. FAM. CODE § 154.121. Generally, a trial court calculates a party's child-support obligations by determining the amount of a party's monthly net resources and applying the statutory percentage guidelines to that amount. *Id.* §§ 154.062, 154.125(b). "Resources" include all wage and salary income, self-employment income, and all other income actually received. *Id.* § 154.062(b); *see also id.* § 154.065 (describing self-employment income). If the party's income fluctuates significantly, the trial court may average the income to determine net resources. *Swaab v. Swaab*, 282 S.W.3d 519, 526 (Tex. App.— Houston [14th Dist.] 2008, pet. dism'd w.o.j.). For a party whose monthly net

resources are less than $9,200 and who has one child, the presumptive child-support amount is 20% of the party's monthly net resources. TEX. FAM. CODE § 154.125(b); Office of the Att'y Gen., Announcement of Adjustment Required by Texas Family Code § 154.125, 44 Tex. Reg. 3559, 3559 (2019) (announcing maximum amount of net resources to which statutory guidelines apply is $9,200). The trial court's child-support order is presumed to be in the child's best interest if it is established according to the Family Code's child-support guidelines. TEX. FAM. CODE § 154.122(a). After establishing the guideline amount of child support, the trial court may consider additional factors to adjust that amount, including the child's age and needs, if evidence justifies varying from the guidelines. *Id.* § 154.123.

The trial court must require a party to provide financial information "sufficient to accurately identify that party's net resources and ability to pay child support." *Id.* § 154.063. There "must be some evidence of a substantive and probative character of net resources" to support the trial court's calculation of net resources. *Miles v. Peacock*, 229 S.W.3d 384, 389 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (quoting *Newberry v. Bohn–Newberry*, 146 S.W.3d 233, 236 (Tex. App.—Houston [14th Dist.] 2004, no pet.)). But the trial court is not required to accept the party's evidence of income and net resources as true. *Moore v. Moore*, No. 01-13-00182-CV, 2014 WL 2538555, at *8–9 (Tex. App.—Houston [1st Dist.] June 5, 2014, no pet.) (mem. op.) (concluding trial court did not abuse discretion in child-support

determination based on father's monthly net resources of $7,500 because some evidence supported that amount, even though father testified his monthly net resources were under $400); *see also, e.g.*, *In re N.T.*, 335 S.W.3d 660, 666–67 (Tex. App.—El Paso 2011, no pet.) (concluding trial court did not err in rejecting father's testimony that he earned less than minimum wage and in crediting mother's testimony, with supporting evidence, that father told her he was earning "at least $10,000 each month").

If the trial court specifically finds that a party is intentionally unemployed or underemployed to avoid child-support obligations, the court may determine child support based on the party's earning potential instead of the party's actual earnings, when supported by the record. *See Iliff v. Iliff*, 339 S.W.3d 74, 80, 82 (Tex. 2011); *see also id.* at 82 (describing burden shifting between parties after one party has offered proof of his or her current wages).

A trial court has discretion to set child support within the Family Code's parameters. *Id.* at 78. We will not disturb a trial court's child-support order on appeal unless the trial court abused its discretion. *Id.* "A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to guiding rules or principles." *Id.* "Under an abuse of discretion standard, legal and factual insufficiency are not independent grounds of error, but rather are relevant factors in assessing whether the trial court abused its discretion." *In re J.J.G.*, 540 S.W.3d 44,

55 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (en banc); *see also Stamper v. Knox*, 254 S.W.3d 537, 542 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (noting that "appellate courts apply a hybrid analysis because sufficiency-of-the-evidence and abuse-of-discretion standards of review often overlap in family law cases.").

### *Analysis*

Father contends the trial court erred in finding his monthly net resources were $2,954.33 when the only evidence presented in the record was that he earned $2,000 per month.

At trial, Father testified that he worked in construction and was self-employed. He also testified that he earned $2,000 a month and his annual adjusted gross income, as reported on his latest income tax return, was $22,000. He did not testify as to any other sources of income. No other witnesses testified about his income, and Mother did not introduce any evidence relating to his income.

Father testified that he worked odd construction jobs for contractors, so the number of jobs he worked in a year varied. Presumably, his income varied as well. But Father did not provide a range of income from which the trial court could determine an average. *Cf. Swaab*, 282 S.W.3d at 526 (trial court may average income to determine net resources if party's income fluctuates significantly).

After determining Father's net resources, the trial court could have adjusted the amount of child support he was obligated to pay to take into account additional factors like D.L.C.'s needs. *See* TEX. FAM. CODE § 154.123. Mother testified that D.L.C. had significant medical needs, as she had been hospitalized multiple times for seizures. But those needs could have justified a variation in the final amount of child support, not in the determination of Father's net resources. *See id.* § 154.062(b) (defining "resources" to include specific types of income).

The trial court stated in its findings of fact and conclusions of law that "[t]estimony and evidence concerning [Father's] capacity for earnings were presented and considered by the Court." Father testified that at his previous job, where he worked until he was laid off in 2019, he earned $40,000 a year. While a trial court can base child-support obligations on a party's earning potential rather than actual income, the trial court may only do so if it makes a specific finding, supported by the record, that the party was intentionally unemployed or underemployed. *See Iliff*, 339 S.W.3d at 80, 82; *In re A.A.T.*, 583 S.W.3d 914, 924 (Tex. App.—El Paso 2019, no pet.) ("[W]hen setting child support based on a finding of a[ party]'s earning potential, the trial court must make an express finding of intentional unemployment or underemployment, and any such finding must be supported by the record."). Here, the trial court made no such finding, and therefore

11

was not authorized to determine Father's child-support obligations based on his earning capacity.

In sum, the only evidence presented was that Father's income was $2,000 per month, and there was no evidence to support the trial court's finding that his monthly net resources were $2,954.33. The trial court was not required to accept Father's evidence, *see Moore*, 2014 WL 2538555, at *8, but there was no other evidence of a substantive or probative character to support the trial court's finding, *see Miles*, 229 S.W.3d at 389. Though a trial court has broad discretion to determine child-support obligations, *see Iliff*, 339 S.W.3d at 78, the trial court's finding that Father's monthly net resources were $2,954.33 appears to be arbitrary, and therefore, the trial court abused its discretion, *see id.* (trial court abuses its discretion when it acts arbitrarily).

We therefore sustain Father's third issue. We reverse the portion of the trial court's order setting forth Father's monthly child-support obligations and remand to the trial court for further proceedings to determine Father's net resources and monthly child-support obligations.

## C.    Retroactive Child Support

### *Applicable Law*

A trial court may order a parent to pay retroactive child support if the parent has not previously been ordered to pay child support and was not a party to any suit

in which a trial court ordered child support. TEX. FAM. CODE § 154.009(a). The trial court must apply the Family Code's child-support guidelines and consider the party's monthly net resources during the relevant time period. *Id.* §§ 154.009(b), 154.131(a), (b).

The Family Code allows parties to enter into a written agreement concerning child support to "promote the amicable settlement of disputes." *Id.* § 154.124(a). The trial court must render an order in accordance with the parties' agreement if the trial court finds the agreement is in the child's best interest. *Id.* § 154.124(b). When parties enter into a temporary agreement concerning child support, the trial court does not abuse its discretion by ordering retroactive child support for the period covered by the temporary agreement, even if the trial court's order conflicts with the earlier temporary agreement. *In re Tucker*, 96 S.W.3d 662, 668 (Tex. App.—Texarkana 2003, no pet.); *accord In re T.G.*, No. 05-12-00460-CV, 2013 WL 3154975, at *5 (Tex. App.—Dallas June 19, 2013, no pet.) (mem. op.).

Again, the trial court has discretion to set child support, and we will not disturb a trial court's child-support order on appeal unless the trial court abused its discretion. *Iliff*, 339 S.W.3d at 78.

*Analysis*

Father argues the trial court abused its discretion by ordering him to pay retroactive child support for the period covered by his temporary agreement with Mother.

Father and Mother signed a mediated settlement agreement before trial. The agreement provided: "Neither parent shall pay child support at this time[.]" The agreement also provided that it was binding, irrevocable, and "the full agreement between the parties concerning the issues addressed and resolved in the settlement **FOR TEMPORARY ORDERS ONLY.**" Father and Mother signed the agreement on August 10, 2020, and the trial court entered a temporary order with the same terms a few weeks later.

The trial court's final order in this suit ordered Father to pay retroactive child support in the amount of $15,644.00 for the period of September 1, 2019, through April 1, 2022. The trial court's order thus ordered Father to pay child support for the period covered by the temporary agreement in which he and Mother agreed not to pay any child support.

At least two appellate courts have considered this issue, and both concluded the trial court did not abuse its discretion in ordering retroactive child support despite the parties' temporary agreement not to pay child support. *In re T.G.*, 2013 WL 3154975, at *5; *In re Tucker*, 96 S.W.3d at 668. We agree that any temporary

14

agreement regarding child support is just that, and a trial court does not abuse its broad discretion by later ordering retroactive child support for the period covered by the temporary agreement. We overrule Father's first issue.

## CONCLUSION

For the reasons discussed above, we conclude there was no error in the trial court's order requiring Father to pay retroactive child support. However, the trial court erred in naming both Texas and Indiana as D.L.C.'s home state, and we therefore reverse the portion of the order finding Indiana is D.L.C.'s home state and modify the trial court's order to delete that finding. The trial court also erred in finding Father's monthly net resources were $2,954.33, and we reverse the portion of the trial court's order setting forth Father's monthly child-support obligations and remand to the trial court for further proceedings to determine Father's net resources and monthly child-support obligations. We affirm the remainder of the order as modified.


Gordon Goodman
Justice

Panel consists of Justices Goodman, Countiss, and Farris.


15