Shannon ALEXANDER, Appellant

v.

Harold W. ROGERS, Appellee.

No. 05–05–00621–CV.

Court of Appeals of Texas, Dallas.

March 5, 2008.

Jimmy L. Verner, Jr., Verner & Brumley, Dallas, for Appellant.

Mary D. McKnight, Law Office of McKnight & Young, L.L.P., Dallas, for Appellee.

Before Chief Justice THOMAS [1] and Justices FRANCIS and LANG–MIERS.

## OPINION

Opinion by Chief Justice THOMAS.

A jury found Harold Rogers should be sole managing conservator and Shannon Alexander should be possessory conservator of the parties' two children. The trial court entered the jury's findings in the final divorce decree. On appeal, Alexander asserts in two issues that the evidence is legally and factually insufficient to support the jury's finding Rogers should be appointed sole managing conservator because she presented credible evidence of a history or pattern of physical abuse by Rogers against a spouse and Rogers failed to rebut the statutory presumption in section 153.004(b) of the family code that naming him sole managing conservator was not in the best interest of the children. For the reasons that follow, we affirm.

### BACKGROUND

Alexander and Rogers met over the internet in January 1999. Alexander moved to Dallas in March 1999 to live with Rogers, and the couple married in September 1999. Their first child, a daughter, was born in December 1999. Their second child, a son, was born in May 2001.

Although the parties disagree about the extent of their conflicts, their relationship began to deteriorate in 2001. Rogers claims there were numerous arguments with name-calling and swearing on both sides. Alexander, on the other hand, contends Rogers called her names and swore at her, but she never did either to Rogers. Alexander also alleges Rogers began to physically abuse her in March 2001 by grabbing her by the hair.

In early 2002, Alexander began making postings on a website named Verbala-

---

1. The Honorable Kerry FitzGerald participated in the original submission of this cause; however, he did not participate in this opin-ion. Chief Justice Thomas has reviewed the record and the briefs in this cause.

buse.com. In her numerous postings, Alexander discussed leaving Rogers and gave and received advice on a number of topics, including protective orders and the effect of a finding of abuse on custody determinations. Alexander also discussed verbal and physical abuse she alleged had occurred throughout her life from a number of different individuals.

Alexander claims the physical abuse by Rogers continued in March 2002 when he punched her in the arm and, on another occasion, pushed her against the wall. Alexander asserts the physical abuse culminated on April 9, 2002 when Rogers grabbed her by the neck, pushed her against a wall, threw her on the bed, and slapped her in the stomach and on April 10, 2002 when Rogers pulled her head down by her hair and pushed her into a kitchen counter. Alexander alleges the final assault injured her neck and left bruises on her hip. Alexander has no photographs of any injuries from the alleged assault. Rogers denies physically assaulting Alexander.

On April 12, 2002, Alexander took the children and a handgun and went to a women's shelter. On April 19, 2002, she filed criminal charges against Rogers based on the alleged April 10, 2002 assault. She saw a doctor the same day about the claimed injury to her neck. Alexander's x-ray was negative, and she declined further medical tests. Rogers was subsequently arrested on assault charges.

Alexander filed for a protective order from Rogers. Rogers then filed for divorce, seeking access to the children. At a hearing on May 1, 2002, an associate judge granted the protective order, finding Rogers had committed family violence. Rogers had no contact with the children from the time Alexander left the marriage until the protective order was signed on May 30, 2002. Beginning in June 2002, Rogers had supervised visitation with the children. Rogers did not have unsupervised visitation with the children until the end of 2002.

In August 2002 and January 2003, Alexander filed criminal charges against Rogers based on alleged violations of the protective order. Rogers was arrested on the January 2003 charges after Alexander delayed him at the children's day care until the police arrived. Alexander also filed at least two complaints with the Texas Department of Family and Protective Services, claiming Rogers had abused or neglected the children. Finally, Alexander contacted the Richardson Police Department, alleging Rogers was repeatedly driving in front of her house. Rogers was found not guilty of violating the protective order in January 2003, and none of Alexander's other charges were substantiated.

After leaving the marriage, Alexander sought counseling with Sandy Gaylord, a domestic violence counselor, claiming verbal, emotional, physical, and sexual abuse by Rogers. Gaylord diagnosed Alexander with Post-traumatic Stress Disorder (PTSD). Although Gaylord never met Rogers, she believed Rogers had abused Alexander. Her opinions were based on what Alexander told Gaylord, the way Alexander told her story, Gaylord's experience, and Gaylord's observations throughout her years of counseling.

The trial court ordered a social study of both Rogers and Alexander by Dr. Catherine Collins. Although Collins concluded neither Alexander nor Rogers had "significant inadequacies" as parents, she noted Rogers had criticized Alexander in front of the children and Alexander had "made negative reports about [Rogers] to multiple agencies." According to Collins, Alexander's allegations were not strongly supported by the documents Alexander submitted to Collins.

The trial court also ordered the parties to undergo a psychological evaluation with Dr. Tim Branaman. Alexander refused to attend the initial meeting, claiming she was afraid to be in the same room as Rogers. Alexander subsequently agreed to the meeting with Gaylord in attendance. Branaman noticed no signs of Alexander being afraid of Rogers during the meeting. Further, his testing of Alexander did not indicate she had PTSD. He also noted Alexander failed to describe to him the past abuse by other individuals that she described to her therapist. Finally, Alexander's description of the abuse by Rogers had magnified over time. In Branaman's opinion, Alexander's inconsistencies affected her credibility.

The jury found Rogers should be sole managing conservator and Alexander should be possessory conservator. The trial court entered a final divorce decree, adopting the jury's findings.

### Standard of Review

 The family code authorizes jury trials in all suits affecting the parent-child relationship except a suit in which adoption is sought and a suit to adjudicate parentage. Act of May 8, 1997, 75th Leg., R.S., ch. 180, § 1, 1997 Tex. Gen. Laws 1033, 1033–34 (amended 2003) (current version at Tex. Fam.Code Ann. § 105.002 (Vernon Supp.2007)). A party is entitled to a jury trial on the issue of the appointment of a managing conservator and the trial court may not contravene the jury's verdict. *Id.; In re Marriage of Robinson,* 16 S.W.3d 451, 453–54 (Tex.App.-Waco 2000, no pet.) However, the jury's findings underlying a conservatorship decision are subject to ordinary legal and factual sufficiency review. *Lenz v. Lenz,* 79 S.W.3d 10, 17 (Tex.2002); *Corrales v. Dep't of Family & Protective Servs.,* 155 S.W.3d 478, 488 (Tex.App.-El Paso 2004, no pet.).

 In a legal sufficiency review, we view the evidence in a light favorable to the finding, crediting favorable evidence if a reasonable fact finder could, and disregarding contrary evidence unless a reasonable fact finder could not. *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005). When reviewing the factual sufficiency of evidence, we examine all the evidence and set aside a finding only if it is so contrary to the evidence as to be clearly wrong and unjust. *Cameron v. Cameron,* 158 S.W.3d 680, 683 (Tex.App.-Dallas 2005, pet. denied). In conducting our review of both the legal and factual sufficiency of the evidence, we are mindful that the jury, as fact finder, was the sole judge of the credibility of the witnesses and the weight to be given their testimony. *City of Keller,* 168 S.W.3d at 819; *Hinkle v. Hinkle,* 223 S.W.3d 773, 782 (Tex.App.-Dallas 2007, no pet.). We may not substitute our judgment for the fact finder's, even if we would reach a different answer on the evidence. *See Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 407 (Tex.1998); *Hinkle,* 223 S.W.3d at 782.

### Analysis

Section 153.004 of the family code applies to a conservatorship decision when there is a history of physical abuse within the family. *See* Tex. Fam.Code Ann. § 153.004 (Vernon Supp.2007). Specifically, as applicable to Alexander's arguments in this case, the fact finder, in making a decision regarding the conservatorship of a child, is required to consider credible evidence of the intentional use of abusive physical force by a party against the party's spouse. *Id.* § 153.004(a). When determining if such credible evidence has been presented, the fact finder must consider evidence that, within the two-year period preceding the filing of the suit or during the pendency of the suit, a protec-

tive order was entered against the parent or the parent intentionally used abusive physical force against the parent's spouse. *Id.* § 153.004(a), (f).[2] If there is credible evidence of a history or pattern of past or present physical abuse by one parent against a spouse, the family code establishes a rebuttable presumption that the appointment of the abusive parent as sole managing conservator of a child is not in the best interest of the child. *Id.* § 153.004(b).

Alexander attempted to prove a history or pattern of physical abuse by Rogers against a spouse through evidence Rogers physically abused his former wife and Alexander and through Gaylord's opinion Rogers abused Alexander. On appeal, Alexander contends the evidence is legally and factually insufficient to support the jury's finding Rogers should be appointed sole managing conservator because (1) she presented credible evidence of a history or pattern of physical abuse by Rogers against a spouse and (2) Rogers failed to rebut the statutory presumption that his appointment as sole managing conservator was not in the children's best interest that arose after Alexander presented credible evidence of a history or pattern of physical abuse by Rogers against a spouse. Because both issues hinge on whether there

was credible evidence of a history or pattern of physical abuse by Rogers against a spouse, we will address them together.

### A. Former Wife

Alexander offered the affidavit of Rogers's first wife, Branette Shelby, dated September 8, 1994, in which Shelby stated Rogers pulled her hair, kicked her, slapped her, and pushed her down.[3] In 1994, Rogers was arrested and charged with a Class C misdemeanor as a result of one such incident. Shelby did not pursue the charges, and the couple subsequently divorced in 1995. Shelby told Dr. Branaman she was still afraid of being harassed by Rogers. Dr. Branaman concluded Rogers "appears to minimize" the extent of his physical abusiveness in his first marriage.

Rogers did not admit to all the conduct alleged by Shelby, but admitted he shoved Shelby several times. He asserted the incidents revolved around Shelby's infidelity and giving him a sexually transmitted disease. He stated that after their divorce, he and Shelby remained friendly and went to dinner several times.

■■ One incident of physical violence can constitute a history of physical abuse. *In re R.T.H.*, 175 S.W.3d 519, 521 (Tex. App.-Fort Worth 2005, no pet.); *In re*

---

**2.** Rogers contends section 153.004(f) did not require the jury to consider the entry of the protective order against him because the order was entered prior to September 1, 2003, the effective date of section 153.004(f). *See* Act of May 28, 2003, 78th Leg., R.S., ch. 642, §§ 1–2, 2003 Tex. Gen. Laws 2046, 2046–47; *Burns v. Burns*, 116 S.W.3d 916, 919 n. 1 (Tex.App.-Dallas 2003, no pet.). Unlike in *Burns*, the protective order in this case was entered into evidence and presented to the jury. Accordingly, we will consider it in our analysis.

**3.** The trial court instructed the jury:
 In determining whether to appoint a party as a sole or joint managing conservator,

you shall consider evidence of the intentional use of abusive physical force by a party against his or her spouse, against a parent of the child, or against any person younger than eighteen years of age committed within a two-year period preceding the filing of suit or during the pendency of the suit. The instruction came directly from the family code. *See* Tex. Fam.Code Ann. § 153.004(a). The alleged abuse of Shelby occurred more than two years prior to the initiation of the suit and, under the trial court's instruction, the jury was not required to consider it. However, because it was before the jury, we will consider it in our analysis.

*Marriage of Stein,* 153 S.W.3d 485, 489 (Tex.App.-Amarillo 2004, no pet.). Accordingly, Rogers's admitted shoving of Shelby could support a finding of a history of physical abuse by Rogers against a spouse. However, the jury could also consider Rogers's explanation for the conduct and the amount of time that had passed since the conduct in determining the weight to be given to the evidence. *See Stucki v. Stucki,* 222 S.W.3d 116, 124 (Tex.App.-Tyler 2006, no pet.) (considering circumstances of incident in determining whether evidence of family violence was sufficient to rebut statutory presumption parents should be named joint managing conservators).

## B. Alexander

Alexander testified she was the victim of physical abuse by Rogers in March 2001, March 2002, and April 2002. Rogers denied he physically abused Alexander during their marriage.[4] No evidence was introduced that documented Alexander's claimed injuries. There were no pictures of, or testimony describing, bruising or other manifestations of injury. Following the alleged assaults in April 2002, Alexander did not visit a doctor for nine days: Her x-rays were negative and she refused an MRI. The only treatment was for her self-reported pain. Although Alexander had Rogers arrested twice, Rogers was never convicted of assault or violating the protective order.

After noting Rogers denied physical aggression towards Alexander, Dr. Branaman concluded that because the marital relationship was being dissolved, future physical aggression by Rogers against Alexander seemed unlikely. Dr. Branaman also concluded, based on Alexander's test results, that "[t]here was no evidence in the profile of depression, anxiety, or traumatic stress that might be associated with a history of having been verbally or physically assaulted," and that Alexander's inconsistent statements regarding past abuse by other individuals and the extent of physical abuse by Rogers raised questions about her credibility and possible motivations.

Dr. Collins's report adopts Dr, Branaman's conclusion that family violence is not likely in the future. Moreover, as to Alexander's negative reports of Rogers to various agencies and her legal actions against him, Dr. Collins concluded: "Her allegations were not strongly supported by the documents she submitted to this counselor."

Many postings Alexander made on the VerbalAbuse.com website spoke to the importance of obtaining a finding of abuse in custody battles. For example, on April 4, 2002—roughly a week *before* the alleged April incidents—Alexander posted a message advising another poster that "you may be able to get sole custody, or primary custody or he may only get visitation if you can prove abuse." The jury could have viewed the postings, which displayed Alexander's significant grasp of family law along with myriad complaints of physical and sexual abuse throughout her life, as evidence Alexander was attempting to

---

4. In her brief, Alexander contends Rogers denied only the alleged April assaults, leaving Alexander's testimony about the alleged March 2001 and March 2002 incidents uncontested. However, both Dr. Branaman and Dr. Collins reported Rogers denied physically abusing Alexander. At trial, Rogers specifically denied assaulting Alexander in April 2002 and, when asked if he treated Alexander "in any bad way whatsoever," responded he swore at Alexander. Rogers further responded "Well, yeah" when asked whether "all [he] did was merely call her names and use bad language to her." Accordingly, the record reflects Rogers denied physically abusing Alexander during the marriage.

manufacture an abuse case against Rogers in order to obtain custody of the children.

■ Alexander relies heavily on the protective order entered by the associate judge in May 2002 that found Rogers had committed family violence. However, while section 153.004(f) of the family code requires the fact finder to consider the entry of a protective order within the two-year period preceding the filing of the suit or during the pendency of the suit in determining whether one of the parties has been physically abusive, it does not make the entry of the protective order dispositive on the issue of conservatorship. *See* TEX. FAM.CODE. ANN. § 153.004(f). Further, although Rogers attended the hearing on Alexander's request for a protective order, neither he nor the associate judge who entered the order had access to Alexander's internet postings that tend to show a reason for manufacturing the claims of physical abuse. The jury was allowed to consider all of the evidence in determining the weight to be given to the entry of the protective order.

### C. Opinions of Alexander's Counselor

Gaylord is a senior counselor at The Family Place. At the time of trial, she had been a domestic violence counselor for eighteen years. Gaylord testified she believed Alexander had been physically abused by Rogers and that Alexander had PTSD. Gaylord based her opinions on her experience as a counselor and the way Alexander related the alleged abuse.

Gaylord's testimony indicates her opinions are substantially derivative of Alexander's reporting of her own experiences, which Gaylord accepted as related by Alexander. Indeed, Gaylord identifies herself as Alexander's advocate. Accordingly, Gaylord's opinions are subject to the same credibility issues as Alexander's testimony.

### D. Application

■ There is nothing in the record that shows the jury did not consider all of the evidence offered by Alexander on the issue of physical abuse by Rogers against Alexander or Shelby. *See Stallworth v. Stallworth,* 201 S.W.3d 338, 348 (Tex.App.-Dallas 2006, no pet.). However, when the parties offer conflicting evidence regarding the same encounter, the fact finder is the sole judge of the weight and credibility of the evidence. *Garner v. Garner,* 200 S.W.3d 303, 310 (Tex.App.-Dallas 2006, no pet.). Here, other than Rogers's admitted shoving of Shelby more than ten years before trial, the evidence of physical abuse by Rogers was disputed or cast into doubt by other evidence. As the sole judge of the weight and credibility of the evidence, the jury could choose to reject Alexander's version of events and could reasonably conclude Alexander failed to establish a history or pattern of physical abuse by Rogers against a spouse. *Hinkle,* 223 S.W.3d at 782; *Burns,* 116 S.W.3d at 920. Without credible evidence of a history or pattern of physical abuse by Rogers against a spouse, section 153.004(b) of the family code did not prohibit the appointment of Rogers as sole managing conservator of the children. *See Coleman v. Coleman,* 109 S.W.3d 108, 111 (Tex.App.-Austin 2003, no pet.).

Accordingly, we overrule both of Alexander's issues and affirm the trial court's judgment.