

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 2-08-012-CV**

MARIA ROSA AVALOS                                                   APPELLANT

V.

ABRAHAM AVALOS                                                       APPELLEE

------------

FROM THE 231ST DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

Appellant Maria Rosa Avalos appeals from a default divorce decree and order in suit affecting the parent-child relationship. Because we hold that the trial court did not abuse its discretion, we affirm the trial court's judgment.

The trial court awarded Appellee Abraham Avalos the family residence, which was the only community asset discussed in any detail at the hearing, and

---

[1] *See* Tex. R. App. P. 47.4.

sole managing conservatorship of the couple's three children and ordered that Maria's visits with the children be supervised. The trial court denied Maria's motions for new trial.

In her first issue,[2] Maria contends that she is entitled to appeal because she was not properly notified of trial. We note that Maria's notice of appeal was timely; we therefore have jurisdiction over her appeal.[3] Maria also complains that she was not properly notified of the trial setting. Rule 245 of the civil rules of procedure provides,

> The Court may set contested cases on written request of any party, or on the court's own motion, with reasonable notice of not less than forty-five days to the parties of a first setting for trial, or by agreement of the parties; provided, however, that when a case previously has been set for trial, the Court may reset said contested case to a later date on any reasonable notice to the parties or by agreement of the parties. . . .
>
> A request for trial setting constitutes a representation that the requesting party reasonably and in good faith expects to be ready for trial by the date requested, but no additional representation concerning the completion of pretrial proceedings or of current readiness for trial shall be required in order to obtain a trial setting in a contested case.[4]

---

[2] Maria presents her issues in the table of contents of her brief in a different sequence than in her argument. Our opinion adopts the same numbering system as her argument.

[3] *See* Tex. R. App. P. 26.1(a)(1).

[4] Tex. R. Civ. P. 245.

Tarrant County Local Rule 3.03(b) provides,

> As soon as practical before the trial date, parties will be notified by the Court to report for trial during the trial week and parties need not appear until called. However, all parties and their attorneys are expected to be available for trial upon short notice during the week that the case has been set for trial. Any case not reached during the week that it is set for trial will be reset by the Court after consultation with the parties.[5]

Local Rule 4.03(1) provides,

> *Final Trial.* Cases will be set for final trial upon written request using the procedure and form as may be required by the specific Court. Each Court's procedure and setting request form shall be obtained from the Court's coordinator.[6]

The record shows that Maria received a trial setting request dated July 13, 2007, for the week of September 24, 2007, more than forty-five days before trial. The record also shows that the trial setting request had been on file with the court since July 16, 2007. The record further shows that on September 19, 2007, the court coordinator contacted both attorneys to notify them of the specific date and time for trial to commence— September 25, 2007, at 9:30 a.m. Maria's lawyer's paralegal acknowledged in a telephone call on September 20, 2007, that the law office had received notice of the trial setting and would be filing motions. The coordinator notified Maria's counsel at the

---

[5] Tarrant County Loc. R. 3.03(b).

[6] Tarrant County Loc. R. 4.03(1).

trial judge's request that the filing of a motion for social study would not take the case off the September 25 trial docket.

A request for a trial setting provides sufficient notice of the trial setting.[7] We hold that the notice of trial in this case was proper under rule of civil procedure 245.[8]

To the extent that Maria contends in her "issue of notice reargued" that she did not receive notice of the hearing on the motion to sign the decree, we note that she failed to bring this matter to the attention of the trial court in her amended motion for new trial filed November 28, 2007. This complaint is therefore not preserved.[9] We overrule Maria's first issue and her "issue of notice reargued."

In her second issue, Maria contends that there is no evidence to support the appointment of Abraham as sole managing conservator or the restriction of her access to the children. Section 153.002 of the family code provides, "The best interest of the child shall always be the primary consideration of the court

---

[7] *See Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 185 (Tex. 1978).

[8] *See* Tex. R. Civ. P. 245.

[9] *See* Tex. R. App. P. 33.1; *Monroe v. Schlicting*, No. 05-98-01341-CV, 2001 WL 301482, at *2 (Tex. App.—Dallas Mar. 29, 2001, pet. denied) (not designated for publication).

in determining the issues of conservatorship and possession of and access to the child."[10] Section 153.131(b) provides that "[i]t is a rebuttable presumption that the appointment of the parents of a child as joint managing conservators is in the best interest of the child. A finding of a history of family violence involving the parents of a child removes the presumption under this subsection."[11] Section 153.004(b) prohibits a trial court from appointing joint managing conservators if credible evidence is presented of a history or pattern of past or present physical abuse by one parent directed against a spouse.[12] Section 153.004(c) provides that the trial court must consider the commission of family violence in determining whether to deny, restrict, or limit the possession of a child by a parent who is appointed as a possessory conservator.[13] Finally, subsection (e) of the statute provides that "[i]t is a rebuttable presumption that it is not in the best interest of a child for a parent to have unsupervised visitation with the child if credible evidence is presented of a history or pattern of past or present . . . physical . . . abuse by that parent

---

[10] Tex. Fam. Code Ann. § 153.002 (Vernon 2002).

[11] *Id.* § 153.131(b).

[12] *Id.* § 153.004(b).

[13] *Id.* § 153.004(c).

directed against . . . a spouse."[14]  One incident of physical violence can constitute a history of physical abuse.[15]

Abraham testified that Maria has a long history of emotional problems. They started in 1992, when the middle child was two years old.  Maria had anxiety attacks and depression and was hospitalized in Chicago.  Four years later, after she was treated with antidepressants, the family moved to Texas, and Maria's health declined.  She fell into a worse depression, began hallucinating, and committed domestic violence against Abraham.  Apparently in connection with this behavior, she was in Hughley Hospital for ten days and while there was diagnosed with psychosis.  She was also charged and jailed. It is unclear whether Maria was convicted, but she was ordered to attend anger management classes.

In July 2007, while the divorce was pending, Maria was hospitalized again after breaking into the family home when no one was there.  The police found her taking a shower.  She started crying when they arrived.  She asked them to take her to JPS Hospital; they did, and she was released three days

---

[14] *Id.* § 153.004(e).

[15] *Alexander v. Rogers*, 247 S.W.3d 757, 762–63 (Tex. App.—Dallas 2008, no pet.); *In re R.T.H.*, 175 S.W.3d 519, 521 (Tex. App.—Fort Worth 2005, no pet.).

later.

At trial, Abraham did not know Maria's current diagnosis. He testified that she was playing with her medication, not taking it, or taking it randomly; she was basically self-medicating. He also testified that the last time he saw Maria in better health was about a year and a half before trial when he believed she was taking the proper medication. But after that, she started taking half as much every other day and then completely stopped taking the antipsychotic medication, and "that's when things just started rolling down."

Additionally, Abraham testified that Maria told CPS that he had hurt their daughter and that his daughter was not sleeping well. Abraham told the trial court that CPS determined after a full investigation that his daughter should not be with Maria without supervision.

In November 2006, Maria took the couple's then four-year-old daughter from school and kept her at a women's shelter for six weeks. Abraham had no access to his daughter until he filed for divorce. He also testified that Maria had recently taken his daughter from the family home, but he found her six hours later.

Ten days before trial, Maria tried to have lunch with her daughter at the daughter's school, in violation of the temporary orders in place at the time.

7

Applying the appropriate standard of review,[16] we hold that the evidence is legally sufficient to support the trial court's naming Abraham as sole managing conservator and restricting Maria's access to the children.

Maria also contends that restricting her access to the children violated section 153.072 of the family code, which provides that "[t]he court may limit the rights and duties of a parent appointed as a conservator if the court makes a written finding that the limitation is in the best interest of the child."[17] As Abraham points out, Maria failed to request the finding within ten days after the hearing.[18] In fact, we see no evidence in the record that Maria ever requested such a finding from the trial court. The trial court therefore did not abuse its discretion by not making the finding. Accordingly, we overrule Maria's second issue.

In her third issue, Maria contends that the property division was manifestly unjust. She specifically complains that the trial court awarded the marital residence and Abraham's retirement benefits to him.

---

[16] *See City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005); *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999).

[17] Tex. Fam. Code Ann. § 153.072 (Vernon 2002).

[18] *See id.* § 153.258.

A trial court is charged with dividing the community estate in a "just and right" manner, considering the rights of both parties.[19] If there is any reasonable basis for doing so, we must presume that the trial court exercised its discretion properly.[20] We will not disturb the trial court's division unless the record demonstrates "that the division was clearly the result of an abuse of discretion."[21] That is, we will not reverse the case unless the record clearly shows that the trial court acted arbitrarily or unreasonably.[22] The complaining party has the burden of proving from the record that the division was so unjust that the trial court abused its discretion.[23] The values of individual items "are evidentiary to the ultimate issue of whether the trial court divided the properties in a just and right manner."[24]

As this court has previously explained,

> In exercising its discretion, the trial court must order an equitable, but not necessarily equal, division of the community

---

[19] *Id.* § 7.001 (Vernon 2006); *Todd v. Todd*, 173 S.W.3d 126, 128–29 (Tex. App.—Fort Worth 2005, pet. denied).

[20] *Todd*, 173 S.W.3d at 129.

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.*

estate. In dividing the estate, the trial court can consider a variety of factors . . . .

Some of the factors the trial court can consider include the spouses' capacities and abilities, benefits which the party not at fault would have derived from continuation of the marriage, business opportunities, education, relative physical conditions, relative financial condition and obligations, size of the separate estates, and the nature of the property.

In addition to the factors set forth in *Murff* [*v. Murff*], the trial court may also consider fraud on the community, wasting of community assets, child custody, and fault in the breakup of the marriage. Additionally, although retirement benefits earned during marriage are generally community property that is subject to division, the trial court, in its discretion, may award such benefits to the party who earned them.[25]

Regarding the house, Abraham, a high school math teacher with Fort Worth Independent School District, testified that there was approximately $70,000 equity in the home, that based on Maria's work history, she should be paying $300 to $350 per month in child support over the next twelve years (until their youngest child is emancipated), that he wanted to raise the children in the house, and that because of the difficulty Maria would have paying and the difficulty he would have collecting child support in the future, he wanted the house in lieu of child support.

---

[25] *Schaban-Maurer v. Maurer-Schaban*, 238 S.W.3d 815, 820–21 (Tex. App.—Fort Worth 2007, no pet.) (citations omitted).

10

Abraham also asked to be awarded any property he had and asked that Maria be awarded any property she had. There is no evidence in the record of the value of any property except the house. Consequently, given all the evidence in the record, we cannot say that Maria has met her burden of proving that the division was so unjust that the trial court abused its discretion.[26] We overrule Maria's third issue.

Having overruled Maria's three issues, we affirm the trial court's judgment.

PER CURIAM

PANEL: DAUPHINOT, GARDNER, and WALKER, JJ.

DELIVERED: December 4, 2008

---

[26] *Todd*, 173 S.W.3d at 128–29.