**Affirm and Opinion Filed this 15th day of August, 2013.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-00298-CV

## IN THE INTEREST OF J.A.L, A CHILD

**On Appeal from the 256th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-09-06253**

## MEMORANDUM OPINION

Before Justices O'Neill, Francis, and Fillmore
Opinion by Justice Francis

Following a bench trial, Jorge Ledezma challenges those portions of the final decree of divorce (1) adjudicating the parentage of the unborn child of his ex-wife, Miriam Macias, and (2) designating Macias as sole managing conservator of their son, J.A.L., after finding Ledezma committed family violence. Because we conclude both issues are without merit, we affirm.

J.A.L. was born in October 2006 to Macias and Ledezma. The couple married in April 2007, and Macias filed for divorce two years later. In her original petition, Macias alleged Ledezma had a history or pattern of committing family violence and asked to be named sole managing conservator of J.A.L. She asked that Ledezma be denied access to the child, or alternatively, supervised access. She also sought child support. Ledezma filed a counter-petition

in which he alleged Macias had a history of committing family violence and sought to be designated sole managing conservator with Macias having only supervised visitation.

At trial, Macias testified she filed for divorce because of the "constant repeated domestic abuse" by Ledezma. She said a week did not go by during their relationship "without one or two fights" and most of the violence was witnessed by J.A.L. She recounted particular instances of abuse, where Ledezma "shook" her and threw her on the bed, threw things, pushed her, and was "verbally aggressive." Some of the abuse occurred when she was pregnant with J.A.L. According to Macias, Ledezma was so jealous that she had to quit a job because he kept accusing her of "cheating or messing around with somebody at work." She said Ledezma or his mother would "often times" go to work with her if she had to go in after hours "so they could physically see that I was working and not doing anything other than working."

During their marriage, Ledezma accused her of cheating on him with his cousins, his brother, and even his father. Macias said his jealousy led to the incident that prompted her to leave him. Ledezma's family from Mexico was in town New Year's Day 2009. After dinner, she went to bed. The next morning, she said, Ledezma accused her of having sexual relations with his cousin the next night before. They argued, and she ultimately told him she "couldn't do it anymore. I was done." When she tried to walk away, Ledezma grabbed her by the neck and squeezed. Macias said she fought back, and J.A.L. began to cry. Ledezma let her go and threw her on the bed. Macias left him two months later and filed for divorce.

After she filed for divorce, she said Ledezma had regular visitation with J.A.L. for several months until J.A.L. came home with a bruise on his leg and said his father had given him a "pow pow," meaning he spanked him. She reported the incident to the police, who contacted Child Protective Services. Ledezma was not charged with any offense, but his visits with J.A.L.

2

were supervised after the incident. At one such visit in April 2010, Ledezma was arrested after Macias's mother accused him of assaulting her. At the time of trial, Ledezma was awaiting a hearing on possible deportation. Macias said Ledezma and his mother had both threatened to flee to Mexico with J.A.L.

CPS referred Macias to Genesis Women's Shelter Outreach for domestic violence counseling. Mary K. Hamilton, a senior women's therapist, testified she saw Macias fifteen times. In those visits, Macias reported instances of abuse by Ledezma and worried that J.A.L. was adversely affected by witnessing Ledezma strangle her. Hamilton believed Macias suffered post-traumatic stress syndrome and counseled her on coping skills.

Dr. Ray O. McClung, a licensed psychologist, conducted psychological evaluations on Macias and Ledezma. Among other things, he said Macias "scored" as a person "experiencing symptoms of post-traumatic stress disorder" and Ledezma "scored as a man who can be at times quite aggressive." Dr. McClung said Ledezma admitted he and Macias fought and that the fighting became more frequent and more intense. He did not admit hitting Macias, but acknowledged that they "pushed" each other. As for Macias's PTSD score, Dr. McClung believed it derived from her marriage to Ledezma and from having lived in an abusive home when she was growing up.

Ledezma testified he "scuffled" with Macias on a couple of occasions but denied abusing her. He said they would argue, and Macias would "challenge" him and get "in front" of him, and he would "move her to the side." He said they "would push each other" but denied pushing her when she was pregnant. Ledezma said that during their relationship, Macias slapped him, hit him, and yelled at him in front of J.A.L. He denied threatening to take J.A.L. to Mexico and wanted the court to provide more visitations with his son to make up for those he missed while

3

being investigated by CPS. Ledezma said CPS did not make any finding that he harmed J.A.L. nor did the police arrest him for any harm to J.A.L. He also testified he had completed recommendations made by the court-ordered social study, including a Batterer's Intervention Program and co-parenting classes, and was in counseling as recommended by Dr. McClung.

After hearing the evidence, the trial court found, among other things, that there was credible evidence of a history or pattern of past or present physical abuse by Ledezma directed at Macias and that it was not in J.A.L.'s best interest that Ledezma be appointed sole managing conservator. The trial court found that it was in the child's best interest that Macias be appointed sole managing conservator. The trial court allowed supervised visitation for six visits before allowing unsupervised visitation between Ledezma and J.A.L.

In his first issue, Ledezma argues the trial court erred in determining parentage of Macias's unborn child. On the day of the trial, Ledezma's attorney advised the trial court that Macias was pregnant and Ledezma was not the father. The attorney stated Macias had represented her boyfriend was the father and he would execute an acknowledgment of paternity. Ledezma's attorney further stated that Macias was to have a document prepared for Ledezma to sign denying he was the father of her unborn child. The attorney indicated she had neither document, both of which were "held out to the Court as a condition of going forward today."

Macias then testified she was four-and-a-half months pregnant and Ledezma was "absolutely not" the father of the child. She asked the trial court to take judicial notice of an acknowledgment of paternity filed by Ralph Stevenson, and the trial court said it "would note" the AOP. Ledezma objected because the notary failed to date the acknowledgment. Macias said she would have the AOP amended, but wanted the court to "take judicial notice of the fact

4

there's been acknowledgment of paternity by someone other than Jorge Ledezma." The court "note[d]" the objection.

Macias went on to testify that Stevenson was her boyfriend. She met him in November 2009, several months after she filed for divorce. They began dating the following summer, and she and J.A.L. moved in with Stevenson in March 2011, shortly after she found out she was pregnant. At the time of trial, which was June 2011, Macias said they planned to marry, but did not have a date. Her baby was due in November. In addition to Macias's testimony, Ledezma testified he was not the father of Macias's unborn child and said he and Macias had not had sexual relations in the past year.

In its judgment, the trial court found no other children of the marriage are expected. Further, the court found "the mother is pregnant and that her husband, Jorge Ledezma denies paternity. The court finds that Ralph Stevenson acknowledges paternity of the unborn child; therefore, Jorge Ledezma is found not to be the father of the unborn child and will not have any rights, duties or obligations regarding this child."

On appeal, Ledezma argues the trial court should not have commenced or concluded the trial while Macias was pregnant and relies on section 160.611 of the Texas Family Code for support. By doing so, he argues he "could be harmed" in the future if he is considered the statutory "presumed father" of a child born within 301 days after the divorce. *See* TEX. FAM. CODE ANN. § 160.204(a)(2) (West 2008) (providing that man is presumed to be father of child if he is married to child's mother and child is born "before the 301st day after the date the marriage is terminated by . . . divorce").

Section 160.611 provides that a proceeding to determine parentage commenced before the birth of the child may not be concluded until after the child's birth and limits the proceedings

5

to service of process, discovery, and collection of specimen for genetic testing. TEX. FAM. CODE ANN. § 160.611.

Ledezma did not complain at trial or in any post-judgment motion that the trial court was acting prematurely in determining he was not the father of Macias's unborn child; in fact, the record is clear that Ledezma sought a finding that he was not the father of the child. The only complaint Ledezma made below concerned the lack of a date by the notary on the AOP. We therefore conclude Ledezma's complaint is waived. *See* TEX. R. APP. P. 33.1.

In his second issue, Ledezma argues the trial court abused its discretion in making a finding of family violence against him, which led to the trial court's designation of Macias as sole managing conservator. A trial court's order regarding conservatorship is subject to review for abuse of discretion. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). The test for abuse of discretion is whether the trial court acted in an arbitrary and unreasonable manner or whether it acted without reference to any guiding principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 242 (Tex. 1985). In family law cases, the abuse of discretion standard overlaps with the traditional sufficiency standards of review; as a result, legal and factual sufficiency are not independent grounds of error but are relevant factors in assessing whether the trial court abused its discretion. *In re A.B.P.*, 291 S.W.3d 91, 95 (Tex. App.—Dallas 2009, no pet.); *In re S.M.V.*, 287 S.W.3d 435, 446 (Tex. App.—Dallas 2009, no pet.). To determine whether the trial court abused its discretion because the evidence is insufficient to support its decision, we consider whether the trial court (1) had sufficient evidence upon which to exercise its discretion and (2) erred in the exercise of that discretion. *A.B.P.*, 291 S.W.3d at 95; *S.M.V.*, 287 S.W.3d at 446. We conduct the applicable sufficiency review with regard to the first question. *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied). We then proceed to

determine whether, based on the elicited evidence, the trial court made a reasonable decision. *Id.* Stated inversely, we must conclude the trial court decision was neither arbitrary nor unreasonable. *Id.*

When the evidence is conflicting, we must presume the factfinder resolved the inconsistence in favor of the order if a reasonable person could do so. *City of Keller v. Wilson*, 168 S.W.3d 802, 821 (Tex. 2005). The trial court does not abuse its discretion if some evidence of a substantial and probative character exists to support its decision. *In re S.E.K.*, 294 S.W.3d 926, 930 (Tex. App.—Dallas 2009, pet. denied).

In determining conservatorship, the best interest of the child shall be the primary consideration. TEX. FAM. CODE ANN. § 153.002. The trial court has wide latitude in determining the best interest of the child, and the trial court's decision will be reversed only when it appears from the record as a whole that the court has abused its discretion. *In re Marriage of Stein*, 153 S.W.3d 485, 488 (Tex. App.—Amarillo 2004, no pet.). It is a rebuttable presumption that the appointment of the parents of a child as joint managing conservators is in the best interest of the child. TEX. FAM. CODE ANN. § 153.131(b). A finding of a history of family violence involving the parents of the child removes the presumption, however. *Id.*

Section 153.004 of the family code applies to a conservatorship decision when there is a history of physical abuse within the family. *See* TEX. FAM. CODE ANN. § 153.004; *Alexander v. Rogers*, 247 S.W.3d 757, 761 (Tex. App.—Dallas 2008, no pet.). As applicable here, when making its decision about the conservatorship of the child, the trial court was required to consider credible evidence of the intentional use of abusive physical force by one parent against the other parent, committed within a two-year period preceding the filing of the suit or during pendency of the suit. *See* TEX. FAM. CODE ANN. § 153.004(a); *Alexander*, 247 S.W.3d at 761. If

credible evidence of a history or pattern of family violence is presented, the trial court may not appoint joint managing conservators. TEX. FAM. CODE ANN. § 153.004(b).

On appeal, Ledezma argues the only evidence of domestic abuse came from Macias, who he claims was not credible. He argues that CPS found no violence committed by him against J.A.L. and the police reached the same result. He also asserts that Dr. McClung's report did not specifically use the word "violence" and refers us to his own testimony which "tends to explain what used to take place between the two parties."

Having reviewed the evidence in this case, we conclude the trial court's finding is supported by the evidence. The fact finder is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See City of Keller*, 168 S.W.3d at 819. As the fact finder, the trial court was entitled to choose to believe one witness and disbelieve another. *Id*. Macias testified that abuse was routine throughout her relationship with Ledezma and recounted specific instances, and the trial was entitled to believe her even in the face of Ledezma's denials and even if some of her testimony contradicted other evidence. Moreover, other evidence showed Macias exhibited symptoms of post-traumatic stress syndrome, which Dr. McClung said derived in part from her marriage to Ledezma. Although Dr. McClung's report did not specifically state that Ledezma scored as a "violent" person, he did testify Ledezma scored as an "aggressive" person. Hamilton testified she treated Macias for post-traumatic stress disorder as a result of family violence and counseled her on coping skills. We overrule the second issue. As for Macias's suggestion that this appeal is frivolous and request that we order sanctions in the amount of $5,000 for "fees and cost associated with the filing of the Appeal," we deny this request.

8

We affirm the trial court's judgment.

120298F.P05

/Molly Francis/
MOLLY FRANCIS
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF J.A.L, A CHILD,

No. 05-12-00298-CV

On Appeal from the 256th Judicial District Court, Dallas County, Texas
Trial Court Cause No. DF-09-06253.
Opinion delivered by Justice Francis, Justices O'Neill and Fillmore participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Miriam Macias recover her costs of this appeal from appellant Jorge Ledezma.

Judgment entered this 15th day of August, 2013.

/Molly Francis/

MOLLY FRANCIS
JUSTICE

10