**AFFIRMED and Opinion Filed April 25, 2022**



In The
# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-20-00695-CV

## IN THE INTEREST OF J.N., L.N., K.N., and M.N., CHILDREN

**On Appeal from the 302nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-17-19715**

## MEMORANDUM OPINION
Before Justices Reichek, Nowell, and Carlyle
Opinion by Justice Reichek

In this appeal arising out of a divorce proceeding, appellant ("Mother") challenges the trial court's failure to (1) interview the eldest of the four children of the marriage in-chambers and (2) consider evidence that appellee ("Father") was physically abusive. After reviewing the record, and for the reasons set forth below, we affirm the trial court's judgment.

## Background

Mother and Father married in 2003 and had four children. The couple separated in April 2017, and on October 3, 2017, Father filed for divorce. Following a hearing before an associate judge to set temporary orders, Father and Mother were appointed joint managing conservators and Father was given the exclusive right to

designate the primary residence of the four children. Mother appealed the associate judge's ruling to the trial court and the court confirmed the associate judge's order.

A final bench trial was conducted on May 6, 2019. Mother requested the trial court interview the eldest child of the marriage, M.N., in-chambers to determine her preference regarding with whom she would live, but the court refused the request. Nearly one year later, on April 28, 2020, the trial court signed a final divorce decree naming Mother and Father as joint managing conservators of the children and granting Father the exclusive right to determine the children's primary residence. Mother then brought this appeal challenging the conservatorship decision.

**Analysis**

## I. Section 153.004

We begin with Mother's second issue in which she contends the trial court erred in failing to consider evidence of physical abuse when deciding the matter of conservatorship. The trial court is given wide latitude in determining custody issues. *Burns v. Burns*, 116 S.W.3d 916, 920 (Tex. App.—Dallas 2003, no pet). Where, as here, the record contains no findings of fact and conclusions of law, all necessary findings of fact to support the trial court's judgment are implied.[1] *Id*. In a non-jury

---

[1] Although Mother requested findings of fact and conclusions of law, her request was untimely and she has waived her ability to complain on appeal about the absence of findings and conclusions. *Am. Realty Tr., Inc. v. JDN Real Estate – McKinney, L.P.*, 74 S.W.3d 527, 530 (Tex. App.—Dallas 2002, pet. denied).

trial, "every reasonable inference and intendment supported by the record will be drawn in favor of the trial court's judgment." *Id.*

Mother relies on section 153.004 of the Texas Family Code to argue the trial court had no discretion to appoint her and Father as joint managing conservators of the children because she presented credible evidence of a history or pattern of physical abuse committed by Father. Mother further argues that, based on the evidence of abuse she presented, the trial court erred in appointing Father as the conservator with the exclusive right to determine the children's primary residence.

Section 153.004(b) states,

> The court may not appoint joint managing conservators if credible evidence is presented of a history or pattern of past or present child neglect, or physical or sexual abuse by one parent directed against another parent, a spouse, or a child . . . . It is a rebuttable presumption that the appointment of a parent . . . as the conservator who has the exclusive right to determine the primary residence of a child is not in the best interest of the child if credible evidence is presented of a history or pattern of past or present child neglect, or physical or sexual abuse by that parent directed against the other parent, a spouse, or a child.

TEX. FAM. CODE ANN. § 153.004(b). As the sole judge of the weight and credibility of the evidence, the finder of fact has broad discretion to determine what constitutes credible evidence of a history or pattern of physical abuse. *See Alexander v. Rogers*, 247 S.W.3d 757, 764 (Tex. App.—Dallas 2008, no pet.); *Coleman v. Coleman*, 109 S.W.3d 108, 111 (Tex. App.—Austin 2003, no pet.). "The trial court is in a better position to determine what will be in the best interest of the children since it faced the parties and their witnesses, observed their demeanor, and had the opportunity to

evaluate the claims made by each parent." *Coleman*, 109 S.W.3d at 111. The court's judgment will not be disturbed on appeal unless there has been a clear abuse of discretion. *Id*.

Mother points to testimony she gave at trial about three alleged episodes of abuse to support her argument that she presented credible evidence of a history or pattern of physical abuse by Father. Mother first testified that Father became irate after she "messed up" a home improvement project and he threw a small bookcase at her. She stated Father then slammed the bookcase at her bare feet. When asked if she was injured, Mother replied she was not. Mother was then asked if Father's actions scared her, and she replied, "It broke my heart."

Mother next testified that friends witnessed Father yelling at her and "confining [her] to an area." Mother stated that "these sorts of things started happening almost constantly."

Finally, Mother testified that, as she was moving out of the house with the children, Father came out to the car carrying her gun and "offered" it to her. Mother conceded that Father did not threaten her with the gun and stated only, "Don't you want to take your gun with you?" When asked if that statement was scary to her, she responded, "It was the scariest moment of my life."

Mother argues that, because Father did not deny these incidents at trial, the court was required to find she had presented credible evidence of abuse. Although Father did not testify about the episodes alleged by Mother, the record shows Father

–4–

was not asked about them. Prior to Father testifying, Mother had made no allegations in her pleadings of family violence or physical abuse and Father was called as a witness before Mother testified. But while Father did not directly contradict Mother's testimony at trial, he presented other evidence concerning Mother's accusations and her credibility.

Father called Christopher Bouchard, a Dallas County family court counselor, as a witness at trial. Pursuant to a court order, Bouchard prepared a child custody evaluation in the case. The report prepared by Bouchard discussed the bookcase incident and stated that Father denied he slammed or threw a bookcase at Mother. Instead, Father stated he accidently set a bookshelf down on Mother's feet while they were moving furniture. Father said Mother then began hitting him and, when he grabbed her wrists to try to restrain her, she bit him and ran out of the house.

Bouchard testified he spoke with the children and reviewed various documents related to the family, including mental health records for both Mother and Father. Bouchard stated he was concerned after his interviews with the children that Mother was using allegations of abuse to influence how the children felt about Father. One of the children indicated Mother had given him suggestions of things to say in his interview with Bouchard.

With respect to the mental health records, Bouchard testified he reviewed a report from Dr. Tim Young, a marital therapist that worked with both Mother and Father for over two years. Dr. Young stated Mother consistently reported Father

was "unstable, unsafe, and angry." But Young "[did] not share the mother's assessment and could not find any other person who corroborated the mother's assessment but instead found the mother to have pronounced problematic behavior." Bouchard recommended that Mother and Father remain as joint managing conservators with Father retaining the exclusive right to determine the children's primary residence.

Father also called Mother's mother, S.M., to testify at trial. S.M. stated she had no concerns about Father caring for the children. She acknowledged that Mother had made allegations of abuse but said the allegations did not begin until Mother and Father separated. According to S.M., Mother had a problem with prescription medications and needed "rehab."

There is nothing in the record to show the trial court did not consider Mother's testimony about Father's alleged actions. *See Burns*, 116 S.W.3d at 921 (implicit in trial court's judgment is finding there was no credible evidence of history or pattern of abuse). But Mother's testimony had to be weighed against the other evidence presented. As courts have noted, family violence allegations are frequently utilized as leverage in contested custody disputes, and what constitutes abuse remains subject to varying interpretations. *See Gonzalez v. Gonzalez*, No. 08-01-00453-CV, 2004 WL 1178898, at *6 (Tex. App.—El Paso, May 27, 2004, no pet.) (mem. op.) (McClure, J., concurring). It was within the trial court's discretion to determine that Mother's testimony, even if true, did not present credible evidence of a history or

pattern of physical abuse. *See id.* at \*4 (trial court may determine that uncontroverted testimony does not present credible evidence of history or pattern of abuse); *see also Lowth v. Lowth*, No. 14-03-00061-CV, 2003 WL 22996939, at \*6 (Tex. App.—Houston [14th Dist.] Dec. 23, 2003, pet. denied) (mem. op.) (trial court could reasonably conclude uncontroverted evidence of one "looming" incident, two pushing incidents, and one incident of father threatening mother did not rise to level of history or pattern of abuse); *Jackson v. Jackson*, No. 05-01-01719-CV, 2002 WL 31513388, at \*1 (Tex. App.—Dallas Nov. 13, 2002, no pet.) (mem. op., not designated for publication) (trial court had discretion to determine uncontroverted evidence father "pushed or shoved" mother several times was not credible evidence of history or pattern of abuse). Evidence of "altercations and confrontations" will not automatically prevent the trial court from appointing parents as joint managing conservators. *See In re T.G.*, No. 05-12-00460-CV, 2013 WL 3154975, at \*8 (Tex. App.—Dallas June 19, 2013, no pet.) (mem. op.).

In addition to her trial testimony, Mother relies on an affidavit she filed in support of an ex parte application for a protective order filed several months after trial concluded, but before the trial court rendered judgment.[2] In the affidavit, Mother alleged various acts of family violence committed by Father including his

---

[2] In her reply brief, Mother also makes a general reference to "evidence in multiple hearings prior to the final trial" without citing any evidence in the record. Evidence from prior hearings for temporary orders that is not reintroduced at trial may not be considered by the trial court in rendering its final orders, nor by this Court in reviewing the trial court's final order. *In re M.D.B.*, 344 S.W.3d 1, 3 (Tex. App.—Texarkana 2011, no pet.).

use of guns in the presence of the children. The same day, Father filed a petition for writ of habeas corpus asserting Mother was refusing to turn over possession of the children as required by the temporary orders.

The record shows Mother's application and Father's petition were heard by an associate judge. Following the hearing, the associate judge ordered Father to turn over all his firearms to his attorney, but denied Mother's request for a protective order. Mother was ordered to turn over the children to Father by 6 p.m. that evening. No reporter's record from the hearing before the associate judge was filed in this Court.

Mother then appealed the denial of her application for a protective order to the trial court. At the de novo hearing on the appeal, Mother's counsel focused mainly on Mother's request that the court interview M.N. in-chambers; no evidence was presented. The trial court confirmed the associate judge's order and denied Mother's request for a protective order.

Based on the record before us, we cannot conclude the trial court erred in determining there was no credible evidence of a history or pattern of abuse and in appointing Mother and Father as joint managing conservators with Father having the exclusive right to determine the children's primary residence. We resolve Mother's second issue against her.

## II. Section 153.009(a)

In her first issue, Mother contends the trial court erred in failing to conduct an in-chambers interview with M.N., who was thirteen years old at the time of trial. Section 153.009(a) of the Texas Family Code states, "In a nonjury trial or at a hearing, on the application of a party, the amicus attorney, or the attorney ad litem for the child, the court shall interview in chambers a child 12 years of age or older . . . to determine the child's wishes as to conservatorship or as to the person who shall have the exclusive right to determine the child's primary residence." TEX. FAM. CODE ANN. § 153.009(a). The local rules for the 302nd Judicial District Court, where this case was tried, state the "Judge will conduct [an] interview if required, but only after completion of all other testimony, and only after scheduling the interview in advance . . . ."

In this case, Father filed a motion more than a year before trial requesting the judge confer with the children. Approximately two months after the motion was filed, Mother filed a jury demand, making Father's section 153.009 request inapplicable. Shortly before trial was scheduled to occur, however, Mother withdrew her request for a jury and immediately began attempting to schedule an in-chambers interview for M.N.

On May 1, 2019, Mother's counsel sent a letter to the trial court's court coordinator stating,

Please accept this letter as my formal written request to schedule [M.N.], a child subject to this suit over the age of 12, to confer with the Judge in chambers in accordance with the posted 302nd Policies and Procedures.

A motion for the children to confer with the Judge was filed on or about December 6, 2017. This case was previously set for a jury trial however the parties waived the jury setting at the pretrial conference. This request is made in accordance with Sec. 153.009(a) of the Texas Family Code.

This matter is set for final hearing on Monday, May 6, 2019 at 9:00 a.m. Per the court's rules it appears that the Judge's interview with the child shall take place following the completion of all other testimony and it is required that the interview be scheduled. Please let me know what time we will need to have the child available for conference with the Judge.

At trial five days later, counsel for Mother again requested the court interview M.N. in chambers. Counsel explained, and Mother later testified, that Mother had withdrawn her jury demand solely to trigger the requirement that the trial court interview M.N. The court refused to conduct the interview stating that Mother had failed to file a written motion and she could not urge the motion filed by Father.

On June 3, 2019, Mother filed a "Brief in support of Texas Family Code §153.009: Interview with a Child in Chambers." In her brief, Mother explained that, in accordance with the trial court's written policies, she had attempted to schedule an interview with M.N. to be conducted after completion of the testimony. These attempts included approximately twenty phone calls and an email to the court coordinator. Mother believed it was in her daughter's best interest to "have a voice in where she lives."

Several weeks later, Mother filed a "Motion for Judge to Confer with Children and Joinder of Petitioner's Motion to Confer." The motion stated it was a written request intended as "an enforcement of the verbal request" made by Mother's counsel during trial. The trial court signed the final divorce decree one year later without having conducted an interview with M.N.

The stated basis for the trial court's denial of Mother's request for an in-chambers interview was that she had not filed her own motion prior to trial. However, section 153.009(a) does not require a formal motion. Nor does it distinguish between an oral or written application.[3] *See In re C.B.*, No. 13-11-00472-CV, 2012 WL 3139866, at *6 (Tex. App.—Corpus Christi—Edinburg Aug. 2, 2012, no pet.) (mem. op.) (oral request at close of evidence sufficient application); *see also Bynum v. Shatto*, 514 S.W.2d 808, 811 (Tex. App.—Corpus Christi 1974, writ ref'd n.r.e.) (oral motion sufficient where rule does not require it be in writing). In this case, Mother made numerous attempts before trial to schedule an interview for M.N.

---

[3] Father relies on *In re S.L.L.*, No. 09-09-00429-CV, 2011 WL 1224983, at *5 (Tex. App.—Beaumont Mar. 31, 2011, pet. denied) (mem. op.), which suggests the trial court has discretion to deny a request for an in-camera interview of a child twelve years of age or older where the application is made verbally. In reaching this conclusion, the court relied on *Hamilton v. Hamilton*, 592 S.W.2d 87, 88 (Tex. App.—Fort Worth 1979, no writ). In *Hamilton*, however, there was no record of an oral motion to interview the children other than vague and conflicting testimony at a hearing on the mother's motion for new trial. *Id.* The court held that, although section 153.009(a) imposes a mandatory duty on the trial court to conduct an interview, the mother failed to show error because the record was "devoid of anything that could be construed as an application." *Id.* We do not read *Hamilton* as standing for the proposition that the trial court has discretion to deny a clear application to conduct a mandatory in-camera interview with a child simply because the application is verbal. To the extent *In re S.L.L.* suggests otherwise, we disagree. *See In re C.B.*, 2012 WL 3139866, at *6.

Even assuming her written request to the court coordinator was insufficient by itself to constitute an application, Mother's counsel made a clear verbal application for an interview at the beginning of trial and filed written applications before the trial court rendered judgment. We conclude this was sufficient to trigger the trial court's mandatory duty to interview M.N. *See In re C.B.*, 2012 WL 3139866, at *6.

Despite the fact that section 153.009(a) imposes a mandatory duty, the trial court's failure to conduct the required interview is subject to a harm analysis. *See* TEX. R. APP. P. 44.1; *In re C.B.*, 2012 WL 3139866, at *6; *see also In re D.I.B.*, 988 S.W.2d 753, 757–59 (Tex. 1999) (harm analysis should be performed even when statute is mandatory). The sole matter made the subject of the mandatory interview is the child's wishes as to conservatorship and primary residence. *See* TEX. FAM. CODE ANN. § 153.009(a). Subsection (c) of section 153.009 provides that "interviewing a child does not diminish the discretion of the trial court in determining the best interests of the child." *Id.* § 153.009(c). Accordingly, even if M.N. had expressed a preference to live with Mother, as Mother suggests she would have done, the trial court would not have been obligated to make a different conservatorship decision.

In this case, M.N. is one of four children of the marriage. "There is a long line of jurisprudence in Texas supporting a preference that two or more children of a marriage should not be divided absent clear and compelling reasons." *Coleman*, 109 S.W.3d at 112. This preference was codified by the legislature in section

–12–

153.251(c) of the Texas Family Code.  TEX. FAM. CODE ANN. § 153.251(c) ("It is preferable for all children to be together during periods of possession.").

The court-appointed counselor who prepared the child custody evaluation opined it was in the best interest of all the children that Father be granted the exclusive right to determine their primary residence.  This opinion was based in part on his interviews with the children and a review of records from Mother and Father's marital therapist, Dr. Young.  Dr. Young counselled Mother and Father for two years, and it was his impression that Father's parenting skills were "quite good, despite reports by his wife to the contrary."  In comparison, Dr. Young stated he found Mother's parenting skills were "compromised by her own instability and agitation."  This evidence strongly supports the trial court's decision to have the children primarily reside with Father.

Mother again relies on her affidavit in support of her request for an ex parte protective order to urge the importance of the in-camera interview.  As discussed above, both the associate judge and the trial judge determined Mother's application was without merit and denied her request for a protective order.

The purpose of the mandatory in-camera interview is to allow an older child to express a preference regarding with whom they will live.  In this case, even if M.N. expressed a desire to live with Mother, we cannot say that alone would present a clear and compelling reason to separate her from her siblings.  *See Coleman*, 109

S.W.3d at 112. Accordingly, we conclude the trial court's failure to conduct the in-camera interview in this case was harmless.

Based on the foregoing, we affirm the trial court's judgment.

/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE

Carlyle, J., concurring in part and dissenting in part.

200695F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF J.N., L.N., K.N., AND M.N., CHILDREN

No. 05-20-00695-CV

On Appeal from the 302nd Judicial District Court, Dallas County, Texas Trial Court Cause No. DF-17-19715. Opinion delivered by Justice Reichek. Justices Nowell and Carlyle participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee JOHN H. NEWTON recover his costs of this appeal from appellant MICHELLE A. NEWTON.

Judgment entered April 25, 2022